986 A.2d 749 (2010)
411 N.J. Super. 467
NEW JERSEY DIVISION OF YOUTH AND FAMILY SERVICES, Plaintiff-Respondent,
v.
R.M., Defendant-Appellant.
In the Matter of I.L., C.L., and I.T., Minor Children.
A-2081-08T4
Superior Court of New Jersey, Appellate Division.
Argued Telephonically November 6, 2009.
Decided February 5, 2010.
Carol Willner, Designated Counsel, argued the cause for appellant (Yvonne *750 Smith Segars, Public Defender, attorney; Ms. Willner, on the brief).
Peter Alvino, Deputy Attorney General, argued the cause for respondent (Anne Milgram, Attorney General, attorney; Andrea M. Silkowitz, Assistant Attorney General, of counsel; Andrea D'Aleo, Deputy Attorney General, on the brief).
Amy Vasquez, Designated Counsel, argued the cause for the minor children (Yvonne Smith Segars, Public Defender, Law Guardian, attorney; Ms. Vasquez, on the brief).
Before Judges CUFF, PAYNE and WAUGH.
The opinion of the court was delivered by
WAUGH, J.A.D.
Defendant R.M. appeals the order of the Family Part denying her application for the entry of a "suspended judgment" as the disposition of the complaint filed by plaintiff New Jersey Division of Youth and Family Services (Division) charging her with child neglect as defined by N.J.S.A. 9:6-8.21. This appeal requires us to determine (1) the criteria for application of the "suspended judgment" provision of N.J.S.A. 9:6-8.51(a)(1); and (2) whether successful completion of a period of suspended judgment necessarily leads to the removal of the underlying finding of abuse or neglect from the central registry maintained by the Division pursuant to N.J.S.A. 9:6-8.11.

I.
We discern the following factual background from the documents in the record, no testimony having been taken in connection with this matter.
R.M. and J.L. are the parents of two minor children, C.L., who was born in February 2008, and I.L., who was born in October 2006. R.M. is also the mother of I.T., who was born in January 2003.[1] R.M. was employed as a child care worker at a pre-school when the underlying incident occurred.
On May 10, 2008, Raritan Township Police Officer Matthew H. Lawrence investigated a report that there was a domestic disturbance at R.M.'s residence in Flemington. When Lawrence arrived at the residence, J.L. was in front of the home, holding I.L. R.M. was running around the front yard holding C.L., who was in his car seat at the time. J.L. was apparently attempting to prevent R.M. from driving with the children in her car.
R.M. told Lawrence that J.L. had attacked her, but Lawrence observed no injuries on R.M. However, Lawrence observed a laceration on J.L.'s nose, which J.L. maintained had been caused by R.M.
Lawrence determined that R.M. and J.L. were highly intoxicated. R.M. took a breathalyzer test, which showed that she was "significantly" over the legal limit for operating a motor vehicle. N.J.S.A. 39:4-50. She was placed under arrest for simple assault and taken to police headquarters. The police notified the Division, as required by N.J.S.A. 9:6-8.10.
The Division responded and conducted interviews with R.M., J.L., and the children. During their interviews, R.M. and J.L. confirmed that they had been caring for C.L. and I.L. when the altercation occurred and that they had been drinking. R.M. denied using cocaine, but J.L. stated that both of them had used cocaine that evening. R.M. subsequently admitted to cocaine use.
*751 After the interviews, R.M. and J.L. agreed to a "Safety Protection Plan" in which the Division placed the children, including I.T., in the care of their respective paternal grandparents. Following the Division's recommendations, R.M. and J.L. completed substance abuse evaluations on May 13, 2008. The evaluations recommended that they both receive outpatient treatment.
The Division filed a verified complaint for custody and sought emergent relief on May 19, 2008. The Family Part judge granted the emergent relief that day. She found that the children's welfare was at risk because of the allegations that R.M. and J.L. used cocaine and engaged in domestic violence while caring for the children. She granted custody to the Division, ordered that the children remain in the care of their respective paternal grandparents, and granted "liberal," but supervised, visitation to all three of the children's parents. The order also required that R.M. and J.L. complete risk assessments, undergo substance abuse treatment, and submit to random urine screenings.
On June 19, 2008, the return date of the Division's order to show cause, the judge entered an order continuing the Division's custody of the children. The order also required that R.M. and J.L. complete their risk assessments, and continue with substance abuse treatment and urine screenings.
On July 29, 2008, R.M. and J.L. underwent risk assessments with Catholic Charities. The assessments revealed that both J.L. and R.M. had histories of occasional marijuana and cocaine use. J.L. asserted that, except for the night of the incident, he was no longer using drugs. R.M. asserted that she stopped using marijuana once she became pregnant, and had occasionally used cocaine at social events. The examiner recommended that R.M. and J.L. complete their substance abuse programs and follow the recommendations of their counselors; and that they continue with random urine screenings. The examiner also recommended that they take couples counseling to improve family relations. The assessments concluded that R.M. and J.L. presented a "moderate to low risk to their children," and that returning the children might be appropriate upon the couple's successful completion of the prescribed treatment and counseling.
On August 21, 2008, the judge returned physical and legal custody of the children to R.M. and J.L., but authorized the Division to maintain care and supervision of the children. She also permitted the Division to make unannounced home visits. The order further required that R.M. and J.L. continue to adhere to the recommendations set forth in their respective risk assessments.
At a September 18, 2008, hearing before a different Family Part judge, R.M. and J.L. each waived their right to a factfinding hearing and admitted to having used drugs and alcohol at the time they were caring for C.L. and I.L. They each stipulated that their conduct put the children at risk of harm. Based upon their sworn admissions, the judge found that R.M. and J.L. had "knowingly, willingly and voluntarily" admitted to acts of child neglect. The judge entered an order keeping the children in the custody of R.M. and J.L., but also continuing the Division's oversight.
At the September 18 hearing, R.M. requested that the judge enter a "suspended judgment" in her case. R.M.'s ultimate goal in doing so was to have her name removed from the Division's central registry, N.J.S.A. 9:6-8.11, because of the adverse effects on employment and other consequences of such inclusion. See N.J. *752 Dept. of Youth & Family Servs. v. J.L., 410 N.J.Super. 159, 170, 980 A.2d 488 (App.Div.2009); N.J. Div. of Youth & Family Servs. v. S.S., 372 N.J.Super. 13, 27, 855 A.2d 8 (App.Div.2004), certif. denied, 182 N.J. 426, 866 A.2d 983 (2005). The Division opposed such a disposition and requested that the issue be briefed. Consequently, the judge deferred decision on whether to grant R.M.'s request and required the parties to submit briefs.
On November 6, 2008, the judge heard oral argument on R.M's request for a suspended judgment. He denied the application, relying on New Jersey Division of Youth & Family Services v. C.R., 387 N.J.Super. 363, 371, 903 A.2d 1129 (Ch. Div.2006), which held that a suspended judgment "is a unique relief that may only be available in rare cases." The judge determined that a case could not be characterized as "rare" or "unique" simply because a parent had complied with the remedial requirements ordered by the court. He also observed that "unfortunately, drug cases where there's addiction or use are not rare and unique."
It appears that, although the judge felt constrained by the narrowness of the stipulated facts, he concluded that facts outside the stipulation would be relevant to the issue before him. He expressed concern about (1) the use of both alcohol and cocaine, which he concluded could not have been a one time event; (2) the allegations of domestic violence; (3) the apparent need initially to remove the children and to require supervised parenting time; and (4) the fact that, because R.M. was a daycare provider, there was a potential harm to others if the finding of abuse was removed from the registry.
At the close of the hearing, the judge signed an order granting the Division's request to terminate the litigation because "the child(ren) have been returned home, [and] conditions have been remediated." The order provided for the children to remain in the legal and physical custody of R.M. and J.L. It also denied the application for a suspended judgment, but noted that the order would not preclude R.M. from seeking relief under Rule 4:50 or N.J.S.A. 9:6-8.59.
This appeal followed.

II.
R.M. raises the following issues on appeal:
I. THE COURT BELOW ERRED IN REQUIRING RARENESS AND UNIQUENESS AS A CONDITION FOR SUSPENDED JUDGMENT.
II. THE COURT BELOW ERRED IN DENYING SUSPENDED JUDGMENT UNDER THE STATUTE AND CASE LAW BECAUSE R.M. MEETS EACH OF THE FOUR PRONGS.
A. R.M. Meets the First Prong of the Test Because She Has No Prior History of Neglect.
B. R.M.'s Offense, While Not Trivial, Does Not Reach a Level of Seriousness That Should Preclude Suspended Judgment.
C. [The Judge's] Opinion With Regard to R.M.'s Acknowledgement and Expression of Remorse is Based Upon Personal Opinion of Such Expressions in General and Not On R.M.'s Individual Fulfillment of the Third Prong Requirement.
D. R.M. Complied With Each and Every Required Condition Including Court Ordered Services, Treatment, And Efforts In Rehabilitating The Relationship With The Children.
III. [THE JUDGE] ERRED BY NOT FULLY EVALUATING AND GIVING WEIGHT TO EACH OF THE FOUR PRONGS.

*753 IV. THE COURT'S COMMENTARY ON WHETHER R.M.'S OFFENSE WAS A FIRST AND ONLY ABUSE IS UNWARRANTED AS THERE IS NO EVIDENCE OF PREVIOUS ACTS ON WHICH TO BASE THIS SPECULATION.
Before turning to the specific issues raised on this appeal, we briefly address our standard of review. We ordinarily accord great deference to the discretionary decisions of Family Part judges. Donnelly v. Donnelly, 405 N.J.Super. 117, 127, 963 A.2d 855 (App.Div.2009) (citing Larbig v. Larbig, 384 N.J.Super. 17, 21, 894 A.2d 1 (App.Div.2006)). Similar deference is accorded to the factual findings of those judges, when they are based on the taking of testimony. Cesare v. Cesare, 154 N.J. 394, 411-12, 713 A.2d 390 (1998). A judge's purely legal decisions, however, are subject to our plenary review. Crespo v. Crespo, 395 N.J.Super. 190, 194, 928 A.2d 833 (App.Div.2007); Lobiondo v. O'Callaghan, 357 N.J.Super. 488, 495, 815 A.2d 1013 (App.Div.), certif. denied, 177 N.J. 224, 827 A.2d 291 (2003).

A.
N.J.S.A. 9:6-8.51(a)(1), which permits a suspended judgment, was enacted in 1974 as part of L. 1974, c. 119, which was comprehensive legislation "concerning the manner of disposition of cases of child abuse or neglect" according to its title. The Legislature's "paramount concern" in adopting the statute, which is commonly referred to as Title Nine, was the "health and safety" of the children involved. N.J.S.A. 9:6-8.8(a). See N.J. Div. of Youth and Family Servs. v. G.M., 198 N.J. 382, 397, 968 A.2d 698 (2009).
The legislation created a two-step hearing process for adjudicating contested cases of abuse or neglect. N.J.S.A. 9:6-8.47. In G.M., supra, 198 N.J. at 397-401, 968 A.2d 698, the Supreme Court described those two hearings as "critical stages" in the processing of abuse and neglect cases.
The first step is the "fact-finding hearing," which is held to "determine whether the child is an abused or neglected child." N.J.S.A. 9:6-8.44. Upon completion of that hearing, the court is authorized to take one or more of five actions: (a) enter a finding of abuse or neglect; (b) amend the complaint to conform to the proofs, which requires that the respondent be given a reasonable opportunity to answer the amended complaint; (c) dismiss the complaint for lack of proof or because the record does not support the need for court intervention; (d) enter an order for interim relief to protect the child or children involved; or (e) make a referral to the Division to "provide such services as are deemed appropriate to the ends of protecting the child and rehabilitating and improving family life, wherever possible." N.J.S.A. 9:6-8.50. We note that the choices are not mutually exclusive, with the exception that dismissal under N.J.S.A. 9:6-8.50(c) would preclude further action by the court.
If abuse or neglect is established as a result of the fact-finding hearing, the second step is the "dispositional hearing." N.J.S.A. 9:6-8.45. That hearing "may commence immediately after the required findings [resulting from the fact-finding hearing] are made." N.J.S.A. 9:6-8.47(a). However, once the court has made the required findings of fact, the dispositional hearing may also be adjourned "to enable [the court] to make inquiry into the surroundings, conditions, and capacities of the persons involved in the proceedings." N.J.S.A. 9:6-8.48(b). In addition, N.J.S.A. 9:6-8.50(e) permits the court to "suspend any dispositional hearing indefinitely" in *754 the event of a referral to the Division for services to the family pursuant to N.J.S.A. 9:6-8.50(e).[2]
Once the dispositional hearing has been completed, N.J.S.A. 9:6-8.51(a) requires the court to enter an order adopting one or more of six dispositional options, which are not all mutually exclusive. The order may (1) suspend the judgment, subject to the limitations of N.J.S.A. 9:6-8.52 discussed below; (2) return the child to the custody of the parent or guardian, which may, pursuant to N.J.S.A. 9:6-8.53, include placing the child under the supervision of the Division or entering an order of protection for not more than one year; (3) place the child with a relative, other suitable person or the Division pursuant to N.J.S.A. 9:6-8.54; (4) enter an order of protection pursuant to N.J.S.A. 9:6-8.55; (5) place the individual found to have abused or neglected a child on probation in accord with N.J.S.A. 9:6-8.56; or (6) require that the individual accept therapeutic services, which may be carried out in conjunction with any other order of disposition.
N.J.S.A. 9:6-8.52 sets forth, in general terms, the parameters of a suspended judgment:
a. The court shall define permissible terms and conditions of a suspended judgment. These terms and conditions shall relate to the acts of commission or omission of the parent or guardian.
b. The maximum duration of any term or condition of a suspended judgment shall be 1 year, unless the court finds at the conclusion of that period, upon a hearing, that exceptional circumstances required an extension thereof for an additional year.
Pursuant to N.J.S.A. 9:6-8.66, if a parent or guardian is "brought before the court for failing to comply with the terms and conditions of a suspended judgment" and the court determines, "after hearing" and "by competent proof," "that the parent or guardian did so, the court may revoke the suspension of judgment and enter any order that might have been made at the time judgment was suspended." See N.J. Div. of Youth & Family Servs. v. G.M. (In re K.M.), 398 N.J.Super. 21, 41, 939 A.2d 239 (App.Div.2008), aff'd in part and modified in part, supra, 198 N.J. at 401-05, 968 A.2d 698.
The statute is silent, however, as to what happens at the end of a successful period of suspended judgment. Our research has not revealed any legislative history that addresses the issue, nor are there any reported Appellate Division or Supreme Court cases providing guidance. Although the Supreme Court noted the availability of the suspended judgment option in G.M., supra, 198 N.J. at 399, 968 A.2d 698, there was no occasion in that case to address the issues now before us.
There is one reported trial court decision that addresses those issues. In C.R., supra, 387 N.J.Super. at 373-74, 903 A.2d 1129, the Family Part analogized the "suspended judgment" provision of N.J.S.A. 9:6-8.51(a)(1) to pretrial intervention (PTI) in criminal cases, N.J.S.A. 2C:43-12; Rule 3:28. In dicta, the judge assumed that successful completion of the period of suspension, like successful completion of PTI, would result in the return of the children to the parent or guardian, the dismissal of the complaint, and what would amount to the expungement of the earlier finding of abuse or neglect. C.R., supra, 387 N.J.Super. *755 at 374, 903 A.2d 1129.[3] However, the judge elected not to enter a suspended judgment. Id. at 379, 903 A.2d 1129.
The opinion in C.R. outlines four factors, derived from N.J.S.A. 2C:43-12(e), that
should be considered before granting a defendant a suspended judgment in abuse and neglect cases: (1) defendant's prior history; (2) seriousness of the offense; (3) defendant's remorse and acknowledgment of the abusive/neglectful nature of his or her act; and (4) defendant's amenability to correction, including compliance with court-ordered services, treatment, and his or her efforts in rehabilitating the relationship with the child[ren].
[Id. at 375, 903 A.2d 1129.]

B.
R.M. relies on C.R., and argues that the Family Part judge erred in applying its four factors. The Law Guardian, representing the minor children, supports C.R.'s position. The Division argues that the judge did not abuse his discretion in denying her application. In addition, the Division argues that we should overrule C.R. to the extent it holds that successful completion of a period of suspended judgment automatically requires the expungement of the underlying finding of abuse or neglect from the central registry.
Because the statute is unclear as to the consequences of the successful completion of a suspended judgment, we must seek to ascertain the Legislature's intent in that regard. G.M., supra, 198 N.J. at 403, 968 A.2d 698. We look first to the "plain words of the statute, read in context with the related portions of Title Nine." Ibid.
As we have already observed, the overall statutory scheme calls for a two-step process. By the time the judge holds a dispositional hearing, the first step, a finding of abuse or neglect, has necessarily taken place. The issue for decision at that point is how to resolve the matter in terms of whether the child will ultimately remain with the parent or be placed elsewhere on a permanent basis. Our reading of the statutory scheme is that a suspended judgment was intended primarily as a temporary alternative to the final return of the child to the parent or placement of the child with the Division or other individuals.
The statutory language itself suggests that a suspended judgment was intended as an interim measure with the ultimate goal of maintaining the family unit. N.J.S.A. 9:6-8.52(a) specifically requires a judge ordering a period of suspended judgment to "define [its] permissible terms and conditions," which "shall relate to the acts of commission or omission of the parent or guardian." That language suggests that further remediation of the issues that gave rise to the Division's involvement is necessary before a final determination is made as to maintaining the family unit or seeking an alternate placement. In essence, the suspended judgment option takes a "carrot and stick" approach. If the terms and conditions are not satisfied, the judge can revoke the suspension and order a placement. By implication, if the period of suspended judgment is successfully completed, the child is returned to, or is permitted to remain with, the parent and the matter is concluded. In any event, the period of suspension must terminate within *756 the one-year period set by N.J.S.A. 9:6-8.52(b), absent an extension based upon a finding of "exceptional circumstances."
Our interpretation is supported by the interpretation of similar language under New York law. As did the judge in C.R., supra, 387 N.J.Super. at 371-72, 903 A.2d 1129, we note the similarity between our statutory language and certain provisions of New York law dealing with neglect cases. Although the statutes are by no means identical, New York also has the two-stage hearing process, N.Y. Fam. Ct. Act § 625 (Consol.2010), and the option for entry of a suspended judgment following the dispositional hearing. N.Y. Fam. Ct. Act § 631(b) (Consol.2010); N.Y. Fam. Ct. Act § 633 (Consol.2010).
In New York, a suspended judgment is understood to provide an opportunity for a parent to avoid termination of parental rights. In 3-38 N.Y. Civil Practice: Family Court Proceedings § 38.10 (2009) (footnote omitted), the practitioner is given the following advice with respect to a suspended judgment:
Clearly, a parent who has not prevailed at fact-finding (i.e., the court ruled that the parent permanently neglected the child) will ordinarily seek a disposition of suspended judgment. In other words, all is not lost for the parent who is adjudicated a permanently neglectful parent, for that parent may seek what is essentially a second chance  the disposition of suspended judgment. The court retains discretion to condition its disposition on the parents submitting to rehabilitation services and the court has the discretion to revoke the suspended judgment if the parent fails to abide by the conditions of the order.
....
... Unless a motion or order to show cause has been filed prior to the expiration of the period of suspended judgment alleging a violation or seeking an extension, the terms of the suspended judgment shall be deemed satisfied and an order committing the guardianship and custody of the child shall not be entered.
The Family Part judges in this case and in C.R. both noted that few judges appear to utilize the suspended judgment procedure. That is also our experience, as exemplified by the paucity of cases concerning the procedure. The likely explanation in our view is that most judges routinely utilize procedures, such as N.J.S.A. 9:6-8.50(e), to defer or "suspend [ ] dispositional hearing[s] indefinitely" because of referrals to the Division for services.[4] That approach is consistent with the provisions of Rule 5:12, which governs Title Nine cases.
In the case before us, the original Family Part judge generally followed the procedures set out in Rule 5:12. Emergent custody was awarded to the Division on May 19, 2008, pursuant to Rule 5:12-1(d). On June 19, 2008, the return date of the Division's order to show cause, the judge continued custody with the Division while both parents continued to receive services. Rule 5:12-4(a). On August 21, 2008, following a status review, Rule 5:12-4(h), the judge returned custody to the parents, but continued the Division's supervisory role while the parents continued to receive services.
The events required by Title Nine were not implemented until September 18, 2008, *757 when the parents waived their right to the fact-finding hearing required by N.J.S.A. 9:6-8.47 and stipulated that there had been an act of neglect. Based upon those admissions, a different Family Part judge made the finding of neglect required by N.J.S.A. 9:6-8.50. The judge immediately proceeded to the dispositional hearing required by N.J.S.A. 9:6-8.47, although he deferred consideration of R.M.'s motion for a suspended judgment. The judge maintained the children in the custody of their parents, but also continued the Division's supervision. That was a disposition entirely consistent with N.J.S.A. 9:6-8.51(a)(2) and N.J.S.A. 9:6-8.53.
In our view, R.M.'s application for a suspended judgment was essentially moot at that point, because the judge had disposed of the matter pursuant to N.J.S.A. 9:6-8.51(a)(2) and the Division was not seeking termination of parental rights or placement outside the home. The judge did not abuse his discretion by refusing to employ a statutory provision that was no longer viable.

C.
We also reject R.M.'s argument that she should have been allowed to have a suspended judgment because it would have resulted in the expungement of the underlying finding of child neglect. There is simply no language in N.J.S.A. 9:6-8.51(a)(1), or anywhere else in Title Nine, stating, or even suggesting, that successful completion of a period of suspended judgment leads to such expungement, just as there is no such provision when children are returned to the parent pursuant to N.J.S.A. 9:6-8.51(a)(2). It is highly unlikely that the Legislature would have intended the expungement of the underlying finding of abuse or neglect under such circumstances without making that intention explicit in the language of the statute. Indeed, the statutory scheme contains no explicit provision for expunging findings of child abuse or neglect, although we have ordered their removal in connection with a reversal of the finding itself. J.L., supra, 410 N.J.Super. at 174, 980 A.2d 488.
We are cognizant of the implications of a finding of child abuse or neglect and its accessibility to certain employers through the central registry, which is why we have repeatedly ensured that the Division provides due process when such findings are made. See In re Allegations of Sexual Abuse at East Park High Sch., 314 N.J.Super. 149, 159-66, 714 A.2d 339 (App. Div.1998); N.J. Div. of Youth & Family Servs. v. M.R., 314 N.J.Super. 390, 404-05, 715 A.2d 308 (App.Div.1998); J.L., supra, 410 N.J.Super. at 170-74, 980 A.2d 488. Nevertheless, in this case, there was clear evidence that R.M. had used drugs and alcohol at a time when she was caring for her young children and there was a strong basis to conclude that she would have driven with them under those circumstances had she not been prevented from doing so. Even were we to determine that expungement through a suspended judgment is a viable option, we would not find that the Family judge abused his discretion in denying such relief to R.M.

III.
In summary, we conclude that the suspended judgment provision of N.J.S.A. 9:6-8.51(a)(1) is generally applicable when a Family Part judge has held a dispositional hearing and is not prepared to enter an order returning the child to the parent or placing the child with the Division, but instead proposes to give the parent an opportunity to maintain the family unit based upon adherence to the particular remedial requirements established pursuant to N.J.S.A. 9:6-8.52(a). We also conclude that successful completion of a period *758 of suspended judgment does not result in expungement of the underlying finding of abuse or neglect. Because we find no basis to conclude that the Legislature intended the suspended judgment provision of N.J.S.A. 9:6-8.51(a)(1) to provide the equivalent of PTI in abuse and neglect cases, we overrule C.R.
Finally, we affirm the order on appeal, based upon our conclusion that a suspended judgment was not a viable option at the time the order was entered and that, in any event, the Family Part judge did not abuse his discretion in disposing of the case against R.M. pursuant to N.J.S.A. 9:6-8.51(a)(2).
Affirmed.
NOTES
[1] I.T. was staying with his paternal grandmother at the time of the underlying incident.
[2] That provision was not part of Title Nine as enacted in 1974, but was added by amendment in 1977. L. 1977, c. 209, § 24.
[3] C.R. is not cited in any reported Appellate Division opinions, although it was applied in one of our unreported decisions and mentioned, but not applied, in another. See N.J. Div. of Youth & Family Servs. v. C.P. (In re Z.P.), No. A-3590-06, 2008 WL 731835 (App. Div. Mar. 20, 2008); N.J. Div. Of Youth & Family Servs. v. R.R., No. A-6474-06, 2008 WL 4202861 (App.Div. Sept. 16, 2008).
[4] Even in a case heading toward likely termination, the provision of such services is generally required to satisfy the third prong of N.J.S.A. 30:4C-15.1(a). See also N.J. Div. of Youth and Family Servs. v. A.W., 103 N.J. 591, 604-11, 512 A.2d 438 (1986) (reciting the four controlling standards later codified in Title 30).