# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2653-18T1

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

       Plaintiff-Respondent/
       Cross-Respondent,

v.

S.W.,

       Defendant,

and

D.M.,[1]

       Defendant-Appellant.

_____

IN THE MATTER OF J.S.,
a Minor,

       Cross-Appellant.

_____

---

[1] We use initials and pseudonyms to refer to the parties to protect their privacy and preserve the confidentiality of these proceedings. R. 1:38-3(d)(12).

Argued telephonically September 14, 2020 –
Decided October 1, 2020

Before Judges Mayer and Susswein.

On appeal from the Superior Court of New Jersey,
Chancery Division, Family Part, Essex County, Docket
No. FN-07-0183-18.

Patricia A. Nichols, Assistant Deputy Public Defender,
argued the cause for appellant/cross-respondent
(Joseph E. Krakora, Public Defender, attorney; Robyn
A. Veasey, Deputy Public Defender, of counsel;
Patricia Nichols, on the briefs).

Mary L. Harpster, Deputy Attorney General, argued the
cause for respondent/cross-respondent (Gurbir S.
Grewal, Attorney General, attorney; Jane C. Schuster,
Assistant Attorney General, of counsel; Mary L.
Harpster, on the brief).

Margo E.K. Hirsch, Designated Counsel, argued the
cause for minor/cross-appellant (Joseph E. Krakora,
Public Defender, Law Guardian, attorney; Meredith
Alexis Pollock, Deputy Public Defender, of counsel;
Margo E.K. Hirsch, on the briefs).

PER CURIAM

Defendant D.M. (Daniel) is the biological father of J.S. (Jason), born in 2001. Daniel appeals and Jason cross-appeals from a March 23, 2018 order finding Daniel abused and neglected Jason made final by a January 11, 2019 order terminating the litigation. We affirm.

Since birth, Jason lived with his biological mother, S.W. (Sharon). In 2017, they resided in Tennessee. In July 2017, Sharon sent Jason to New Jersey to be with his father. Daniel was under the impression Jason would stay in New Jersey just for the remainder of the summer. Sharon bought a one-way ticket for Jason to travel to New Jersey.

When the summer was ending, Daniel asked Sharon to arrange for Jason's return to Tennessee. Sharon refused, explaining Jason should remain in New Jersey with Daniel permanently. According to Sharon, she suffered from a terminal illness that prevented her caring for Jason.

Realizing Jason had to be enrolled in school as of September and needed health insurance, Daniel applied for and was granted temporary custody of his son in a September 5, 2017 order issued in Essex County under Docket No. FD-07-2685-11. This order also terminated Daniel's child support obligation based on his having custody of Jason.

Jason and Daniel had a tenuous relationship from the moment Jason came to New Jersey. Jason stayed out past his curfew, brought guests home against his father's wishes, spoke disrespectfully to his father, and damaged the interior of his father's home.

3

On October 17, 2017, the Department of Child Protection and Permanency (Division) received a referral from the Irvington Police Department. Sharon contacted the police, alleging Daniel assaulted Jason. The police went to Daniel's residence, and Daniel admitted grabbing Jason by the shirt. However, Jason denied being struck by his father. The police explained the Division would contact Daniel to provide services to assist him with parenting Jason.

After the referral, the Division's representatives attempted to visit Daniel and Jason but were unable to make contact. Sharon called the Division on October 20, 2017 to follow up on their investigation.

The relationship between Daniel and Jason continued to deteriorate. One evening, Jason returned past curfew, and Daniel refused to let Jason into the house. Jason entered the house though an open window and went to sleep. When Daniel discovered Jason asleep in a bedroom, Jason claimed his father poured hot water on him, which Daniel denied.

The next day, Jason woke to Daniel telling him to "get his stuff because they were going somewhere." Jason dressed, and Daniel took him to the Irvington Police Department. Daniel went to the police station because he was unable to cope with Jason's uncontrolled behavior and wanted Jason out of the house. The police were unable to provide assistance and suggested Daniel

contact the Division or take Jason to the crisis unit at Newark Beth Israel Medical Center.

Daniel decided to take Jason to the hospital. Daniel asked the hospital staff to have Jason psychiatrically evaluated, but the hospital declined to admit Jason. Daniel then "stepped out" of the hospital, claiming he was going to the store, and never returned. Because the hospital was unable to contact Daniel to retrieve Jason, the Division received a referral from Newark Beth Israel Medical Center. The Division initiated an emergent removal and placed Jason at a YMCA shelter. The Division was unable to contact Daniel despite multiple attempts calling and visiting his home.

On November 8, 2017, the Division filed a verified complaint and order to show cause (OTSC) for custody of Jason. At the initial OTSC, Daniel was present in court and represented by provisional counsel. Sharon appeared telephonically. The Family Part judge signed the OTSC and granted temporary custody of Jason to the Division.

During the initial OTSC proceeding, Daniel received a form to apply for representation through the Office of the Public Defender, referred to as the "5A" form. The judge urged Daniel to complete the document.

5

On the return date of the OTSC, December 1, 2017, Daniel appeared without counsel. Sharon did not appear. The judge reminded Daniel of his right to counsel and the financial parameters governing representation through the Office of the Public Defender. An attorney, who would later represent Daniel during the fact-finding hearing, agreed to discuss the 5A form with Daniel. Daniel acknowledged the need to complete the 5A form if he wanted counsel during the proceedings. Custody of Jason continued with the Division, and the judge scheduled a compliance hearing for February 2, 2018.

At the February 2, 2018 hearing, the judge continued the Division's custody of Jason and scheduled a fact-finding hearing for March 9, 2018. Although Daniel and Sharon had notice of the February 2 hearing, neither appeared in court. The judge noted there was no 5A form submitted by Daniel or Sharon. The Division's attorney agreed to provide another 5A form and urge Daniel to apply for representation. The judge ordered the Division to provide both Sharon and Daniel with the 5A forms and copies of all evidence the Division intended to submit at the fact-finding hearing.

At the March 9, 2018 fact-finding hearing, Daniel appeared with the same attorney who explained the importance of completing the 5A form. Sharon again did not appear. The Division asked the judge to adjourn the fact-finding

hearing to March 29, 2018 so Daniel's counsel would have time to review the evidence, and the judge agreed.

The fact-finding hearing was originally scheduled to address the neglect allegations against both Sharon and Daniel. However, because the judge was unsure if Sharon received notice of the proceeding or if she wanted counsel, the judge bifurcated the fact-finding hearing as to Sharon.[2]

The fact-finding hearing as to Daniel proceeded. The court heard testimony from the Division case worker who investigated the allegation of neglect, and the Division's investigative summary was entered into evidence without objection.

Based on the testimony and evidence, the judge concluded Daniel abandoned Jason within the meaning of N.J.S.A. 9:6-1, and that Jason was an abused and neglected child. The judge determined the Division's case worker was "extremely credible" and "was very honest in all of his responses."

The judge found Jason "was very out of control. He [was] a [fifteen] year old child with behavioral issues, bad behavior." She concluded Jason was "dumped" on Daniel because Sharon never told Daniel about "the issues . . . that the child faced." After three months of living with Jason, the judge explained

---

[2] The judge rescheduled the fact-finding hearing as to Sharon for April 30, 2018.

A-2653-18T1

"dad just walked in one day to the police station – walked into [the] Crisis [unit at the hospital] and left. He just left the child with no plans for the child. . . . And that's just not acceptable." The judge acknowledged Jason's behaviors presented "reasons to be concerned, . . . to reach out and get help." However, the judge stated the troubling behaviors did not "justify a father, a biological father walking away from a child of [fifteen] years old." The judge also found it significant that the Division reached out to provide services and Daniel did not respond. The judge concluded Daniel's conduct forsook his parental duties to Jason, constituting abandonment under N.J.S.A. 9:6-1, resulting in Jason being "an abused or neglected child."

Further compliance hearings regarding Jason's placement, well-being, and progress were held in the spring and summer of 2018. At the compliance review and permanency hearing on September 19, 2018, the Division presented the judge with an independent living plan for Jason. The judge approved the plan due to the difficulty Jason would experience living with either of his parents.

In the fall of 2018, Sharon offered to care for Jason, and the Division altered its independent living plan. Sharon agreed to travel to New Jersey on or about December 16, 2018 to retrieve Jason. Daniel did not object to Sharon's plan, and the judge granted joint legal custody of Jason to Sharon and Daniel

and physical custody of Jason to Sharon. Based on the approved plan, the litigation terminated on January 11, 2019. Daniel filed a notice of appeal and Jason filed a cross-appeal.

On appeal, Daniel raises the following arguments: the Family Part judge failed to consider the totality of the circumstances; the judge made contradictory fact-findings and incorrect legal conclusions; the judge failed to rule on his application to proceed under Title Thirty, N.J.S.A. 30:4C-12; and the judge did not comply with the requirements of Rule 1:7-4. He also argues ineffective assistance of counsel, and challenges - for the first time on appeal - the trial court's jurisdiction of the matter under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA) and the Interstate Compact on the Placement of Children (ICPC). Jason joins in Daniel's arguments that the evidence did not support a finding of abuse or neglect and the judge failed to address his motion to proceed under Title Thirty.

We defer to the fact-findings by the Family Part because of its "superior ability to gauge the credibility of the witnesses who testify before it and because it possesses special expertise in matters related to the family." N.J. Div. of Youth & Family Servs. v. F.M., 211 N.J. 420, 448 (2012) (citing Cesare v. Cesare, 154 N.J. 394, 413 (1998)). Fact-findings that are supported by

"substantial credible evidence in the record" are upheld. <u>N.J. Div. of Youth & Family Servs. v. L.L.</u>, 201 N.J. 210, 226 (2010). We also defer to the trial court's credibility determinations, evaluation of the underlying facts, and inferences drawn therefrom unless they are "so wide of the mark that a mistake must have been made." <u>N.J. Div. of Youth & Family Servs. v. M.M.</u>, 189 N.J. 261, 279 (2007) (quoting <u>C.B. Snyder, Inc. v. BMW of N. Am., Inc.</u>, 233 N.J. Super. 65, 69 (App. Div. 1989)).

Having reviewed the record and applying the foregoing standards, we are satisfied there is substantial credible evidence supporting the judge's determination that Daniel abused and neglected Jason. An "abused or neglected child" is defined as, among other things, a child who is at risk of danger "as the result of the failure of his parent or guardian . . . to exercise a minimum degree of care (a) in supplying the child with adequate food, clothing, shelter, education, medical or surgical care . . . or (b) in providing the child with proper supervision or guardianship . . . ." N.J.S.A. 9:6-8.21(c)(4). An abused or neglected child is alternatively defined as one who is "willfully abandoned by his [or her] parent or guardian . . . ." N.J.S.A. 9:6-8.21(c)(5); N.J.S.A. 9:6-8.9(e). Whether characterized as abandonment or failure to exercise a minimum degree of care, the judge's finding of abuse and neglect focused on Daniel

leaving Jason at the hospital and then avoiding the Division's efforts to contact him regarding Jason.

We next consider a contention not raised by Daniel before the Family Part judge. On appeal, Daniel argues the trial court violated the Uniform Child Custody Jurisdiction and Enforcement Act, N.J.S.A. 2A:34-54 to -95 (UCCJEA), and the Interstate Compact on the Placement of Children, N.J.S.A. 9:23-5 to -18 (ICPC), because Tennessee was Jason's home state. He argues no New Jersey court, including the Essex County court that issued the September 2017 order granting him custody of Jason, had "jurisdiction to make an initial child custody determination" respecting Jason. N.J.S.A. 2A:34-65(a)(1).

The UCCJEA governs subject matter jurisdiction in child custody proceedings where the parties cross state or national borders. Sajjad v. Cheema, 428 N.J. Super. 160, 170-71 (App. Div. 2012). The UCCJEA gives priority to the "home" state as a basis for subject matter jurisdiction. Dalessio v. Gallagher, 414 N.J. Super. 18, 22 (App. Div. 2010); N.J.S.A. 2A:34-65(a)(1). "Home state" is defined as "the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding." N.J.S.A. 2A:34-54. A New Jersey court may make an "initial child custody determination" if:

(1) this State is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this State but a parent or person acting as a parent continues to live in this State;

(2) a court of another state does not have jurisdiction under paragraph (1) of this subsection, or a court of the home state of the child has declined to exercise jurisdiction . . . and:

(a) the child and the child's parents, or the child and at least one parent . . . have a significant connection with this State other than mere physical presence; and

(b) substantial evidence is available in this State concerning the child's care, protection, training and personal relationships . . . .

[N.J.S.A. 2A:34-65(a).]

Here, Jason resided in New Jersey with his father for approximately two months when Daniel sought temporary custody in Essex County in September 2017. As part of the custody application submitted to the Essex County court, Daniel believed a custody action had been filed in Indiana because Jason lived with Sharon in Indiana. However, Daniel provided no documents supporting a custody determination in Indiana. In July 2017, Sharon told Daniel she lived with Jason in Tennessee. When Sharon contacted the Division on October 17, 2017, she provided a Tennessee residence. In a follow up telephone call to the

12

Division several days later, Sharon reported she was homeless and living in Indiana. As part of its investigation, the Division obtained Jason's immunization records from Kentucky and the telephone number Sharon provided to the Division had a Kentucky area code.

Based on this information, the judge needed to determine where and with whom Jason resided in the six months prior to the September 2017 custody order issued in Essex County. Here, the record indicated Indiana, Kentucky, Tennessee, and New Jersey did not qualify as Jason's home state in accordance with the statute. Under such circumstances, the Family Part judge was authorized by statute to exercise "exclusive original jurisdiction" over the abuse and neglect proceedings under Title Nine, "[n]otwithstanding any other law to the contrary." N.J.S.A. 9:6-8.24(a); see also N.J.S.A. 9:6-8.22.

Moreover, the doctrine of quasi-estoppel precludes Daniel from "blow[ing] both hot and cold" as to the jurisdiction of the New Jersey courts regarding Jason. Heuer v. Heuer, 152 N.J. 226, 237 (1998) (quoting Kazin v. Kazin, 81 N.J. 85, 94 (1979)). Daniel consented to the jurisdiction of the New Jersey courts in 2017 when he applied for custody of Jason and termination of child support. On this record, we are satisfied the Family Part judge had jurisdiction to proceed with the abuse and neglect matter.

We next consider Daniel's argument that he was denied effective assistance of counsel. N.J.S.A. 9:6-8.43(a) requires a Family Part judge to advise a defendant in an abuse or neglect proceeding of the defendant's right to counsel and, if the defendant is indigent, the ability to apply for representation through the Office of the Public Defender. Where a defendant has applied for representation through the Officer of the Public Defender, the court may adjourn the proceedings, but is not precluded from granting temporary relief. Ibid.

Here, Daniel was represented by provisional counsel at the commencement of the abuse and neglect proceedings. In addition, Daniel was advised he could apply for representation through the Office of the Public Defender, and the Division provided him with the form to obtain representation. The judge urged Daniel on more than one occasion to apply for representation. In a February 2, 2018 order, the judge noted Daniel "previously declined representation." Despite having notice of the proceedings as of November 8, 2017, and his legal right to apply for publicly funded counsel, Daniel did not complete the necessary 5A form until March 9, 2018. After the judge learned Daniel completed the 5A form and would be represented by a public defender in accordance with N.J.S.A. 9:6-8.43(a), she adjourned the fact-finding hearing to accord Daniel's attorney sufficient time to prepare. Daniel's attorney

14

participated fully on his behalf at the fact-finding hearing. Counsel vigorously cross-examined the Division witness and thoroughly reviewed the Division's November 22, 2017 investigation report.

We are satisfied Daniel was not denied effective assistance of counsel because his own failure to apply for representation resulted in his lack of counsel during the early hearings before the trial court. In addition, during the fact-finding hearing, Daniel was more than adequately represented by counsel who had sufficient opportunity to prepare his defense. Nor did Daniel explain what more his counsel could or should have done to dissuade the judge from finding that he abandoned Jason.

We next address the additional trial errors asserted by Daniel and Jason. Daniel and Jason claim the judge erred in failing to issue a definitive ruling on their motions to dismiss the Title Nine action and proceed solely under Title Thirty. In addition, Daniel asserts the judge made contradictory findings of fact that "offend the interests of justice"; failed to consider the totality of the circumstances in determining whether he abused or neglected Jason; and violated Rule 1:7-4 by failing to properly analyze the statute and set forth incorrect legal conclusions. Lastly, Daniel claims the judge failed to consider a suspended judgment. We reject these arguments.

Under Title Nine, the Division is tasked with "protect[ing] children 'who have had serious injury inflicted upon them' and mak[ing] sure they are 'immediately safeguarded from further injury and possible death.'" N.J. Div. of Youth & Family Servs. v. A.L., 213 N.J. 1, 18 (2013) (quoting N.J.S.A. 9:6-8.8). Title Thirty is concerned with "provid[ing] services to at-risk children and families in order to prevent harm to their children." Id. at 19 (quoting N.J.S.A. 30:4C-1.1(a)). Title Thirty allows for Division intervention even absent an abuse or neglect allegation. N.J.S.A. 30:4C-12. When the Division removes a child from a parent on an emergency basis premised on an allegation of abandonment, abuse, or neglect, it may proceed under both Title Nine and Title Thirty in a consolidated manner. N.J. Div. of Youth & Family Servs. v. R.D., 207 N.J. 88, 113 (2011) (citing N.J.S.A. 9:6-8.24(e)).

Upon learning from Newark Beth Israel Medical Center that Daniel left Jason at the crisis unit and refused to retrieve him, the Division initiated an emergent "Dodd" removal and placed Jason at the YMCA. See N.J.S.A. 9:6-8.28. When the Division was unable to contact Daniel, it filed an OTSC and verified complaint for custody of Jason. The Division's complaint cites Titles Nine and Thirty as the bases for custody and sets forth supporting facts. The facts advanced, particularly those surrounding Daniel's refusal to let Jason reside

with him and leaving the child at the hospital despite having custody of Jason, support a prima facie case of abandonment constituting abuse or neglect under Title Nine. See N.J.S.A. 9:6-8.21(c)(5) (defining an "abused or neglected child" as one who is "willfully abandoned" by a parent).

At the conclusion of the fact-finding hearing on March 28, 2018, the judge ruled on the application by Daniel and Jason to dismiss the Title Nine component of the complaint. While the judge determined Daniel did not physically abuse Jason, she found Daniel left Jason at Newark Beth Israel Medical Center after being told the hospital would not admit him and avoided the Division's efforts to contact him regarding Jason.

The judge set forth the statutory criteria under Title Nine by which a parent can be held liable, specifically citing the definition of abandonment and relevant case law. She found that Daniel's actions satisfied the definition of abandonment because he "did not want to take the child back" from the hospital.

We are satisfied the judge sufficiently set forth her reasons for denying dismissal of the Title Nine component of the case and proceeding under Title Thirty.

We also reject Daniel's argument that bifurcation of the fact-finding was improper. The Division, Law Guardian, and Daniel's counsel did not object to

proceeding with the fact-finding hearing as to Daniel on March 28, 2018, and adjourning the hearing as to Sharon until April 30, 2018. The doctrines of invited error and plain error preclude Daniel from contesting the bifurcation ruling on appeal. See N.J. Div. of Youth & Family Servs. v. M.C. III, 201 N.J. 328, 340-41 (2010); R. 2:10-2.

Lastly, Daniel contends the judge erred by failing to consider a suspended judgment. Because Daniel never raised this issue before the trial judge, we review this argument for plain error "clearly capable of producing an unjust result." R. 2:10-2.

Once the trial court has completed the fact-finding hearing, the dispositional hearing "may commence immediately" or may be adjourned "to enable [the court] to make inquiry into the surroundings, conditions, and capacities of the persons involved in the proceedings." N.J.S.A. 9:6-8.47 to -8.48. The purpose of a dispositional hearing "is to determine whether a child who has been in the [Division's custody] 'may be safely returned to the custody of the parent from whom the child was removed.'" N.J. Div. of Youth & Family Servs. v. I.S., 422 N.J. Super. 52, 70 (App. Div. 2011) (quoting N.J. Div. of Youth & Family Servs. v. N.D., 417 N.J. Super. 96, 107 (App. Div. 2010)).

A suspended judgment is one of the dispositions in an abuse and neglect proceeding authorized by N.J.S.A. 9:6-8.51(a), which may be entered after a dispositional hearing. However, a suspended judgment after a dispositional hearing does not remove the trial court's finding of abuse or neglect. N.J. Div. of Youth & Family Servs. v. R.M., 411 N.J. Super. 467, 480-81 (App. Div. 2010).

Here, the judge approved the Division's plan to reunify Jason and Sharon in December 2018 and terminated the litigation on January 11, 2019. Daniel never requested a suspended judgment at any point during the proceedings before the Family Part judge. Given that Jason has been returned to his mother's custody, a remand for a hearing regarding Daniel's request for a suspended judgment is moot. See R.M., 411 N.J. Super. at 480. Moreover, a suspended judgment would not eliminate the inclusion of Daniel on the State registry that might identify him as an abuser of children. R.M., 411 N.J. Super. at 480-81.

The remainder of the arguments asserted in the appeal and cross-appeal lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2653-18T1