**RECORD IMPOUNDED**

NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-1045-12T4

NEW JERSEY DIVISION OF YOUTH
AND FAMILY SERVICES,

    Plaintiff-Respondent,

v.

P.C.,

    Defendant-Appellant.

_____

IN THE MATTER OF O.B.,
B.C. AND N.C.,

    Minors.

_____

> **APPROVED FOR PUBLICATION**
>
> **March 5, 2015**
>
> **APPELLATE DIVISION**

        Telephonically argued April 10, 2014 —
Decided January 15, 2015

        Before Judges Lihotz, Maven and Hoffman.

        On appeal from the Superior Court of New
Jersey, Chancery Division, Family Part,
Bergen County, Docket No. FN-02-0315-11.

        Amy M. Williams, Designated Counsel, argued
the cause for appellant (Joseph E. Krakora,
Public Defender, attorney; Ms. Williams, on
the brief).

        Mary C. Zec, Deputy Attorney General, argued
the cause for respondent (John J. Hoffman,
Acting Attorney General, attorney; Andrea M.

Silkowitz, Assistant Attorney General, of counsel; Ms. Zec, on the brief).

Noel C. Devlin, Assistant Deputy Public Defender, argued the cause for respondent O.B., a minor (Joseph E. Krakora, Public Defender, Law Guardian, attorney; Mr. Devlin, on the brief).

Suzanne M. Carter, Designated Counsel, argued the cause for respondents B.C. and N.C. (Joseph E. Krakora, Public Defender, Law Guardian, attorney; Ms. Carter, on the brief).

The opinion of the court was delivered by

MAVEN, J.A.D.

Defendant P.C. appeals from a Family Part order determining she neglected the emotional needs of her teenaged daughter O.B. (Olivia).[1] At the commencement of a fact-finding hearing on the complaint filed by plaintiff the Division of Youth and Family Services[2] (the Division) concerning conduct by B.C., defendant's former husband, the trial judge suggested sua sponte the facts "could rise" to support a finding of neglect against defendant, even though the Division's complaint had not alleged substantive

_____

[1] We refer to the children by fictitious names to protect their privacy and for ease of reference.

[2] On June 29, 2012, the Governor signed into law A-3101, which reorganizes the Department of Children and Families, including the renaming of the Division as the Division of Child Protection and Permanency (Division). L. 2012, c. 16, eff. June 29, 2012 (amending N.J.S.A. 9:3A-10(b)).

A-1045-12T4

allegations that she had abused or neglected Olivia.  Following an adjournment, although the Division's complaint was not amended, the same judge presided over the reconstituted fact-finding hearing reviewing the conduct of both defendant and B.C. We conclude this was error and reverse.

I.

B.C., is Olivia's stepfather and the father of defendant's other children, Brandon and Nicole.  The three children spent time with B.C. at his home on weekends.

On May 25, 2011, the Division received a referral from Olivia's school guidance counselor stating Olivia disclosed that B.C. had engaged in a sexual relationship with her at his home. As a result of the referral, the Bergen County Prosecutor's Office interviewed Olivia, who said the sexual assaults had been occurring since 2009.  Olivia had not disclosed the abuse to defendant.  A Division caseworker observed the interview.

Later that day, the caseworker interviewed defendant who expressed shock and disbelief at Olivia's allegations. Defendant mentioned she had trouble in the past with Olivia making up stories.[3]  Defendant agreed to cooperate and signed a

_____

[3] In May 2010, the Division investigated allegations made by Olivia that her stepfather had threatened to physically harm her and her siblings.  During the investigation Olivia recanted her story and admitted that she lied. The Division determined the
(continued)

safety plan permitting the Division to interview the children and restraining B.C. from the children.

The next day, a Division caseworker investigated a claim that Olivia was "upset about the way [defendant] ha[d] been treating her" and that defendant "had cursed at her." Defendant denied cursing at Olivia, stated she was "trying to be supportive to all her children" and Olivia's statements were a surprise. When confronted by the caseworker, Olivia denied that defendant cursed at her, but then reported defendant told Brandon that she was going to send her to boarding school. Her brother and sister both reported to the caseworker similar facts. When confronted by the caseworker, defendant stated the children had misunderstood her.

On May 27, Olivia underwent a medical evaluation by Nina Agrawal, M.D. The Division provided Dr. Agrawal its intake information and the screening summary from the initial report of sexual abuse. Dr. Agrawal reported: "The examination does not confirm or deny the possibility of sexual abuse." The report also stated that "the examination should not discount [Olivia's] report of sexual abuse." Based upon "intake information

---

(continued)
allegations were unfounded and concluded that Olivia had "a long history of making up stories about her parents when she is mad at them."

provided by [the Division]," Dr. Agrawal concluded that defendant was not supportive of Olivia and believed that she was lying. Dr. Agrawal further opined that Olivia was "at risk for recantation due to the mother's failure to support her disclosure. [Defendant's] outward support for B.C. by financially supporting his discharge from jail [wa]s placing the safety of [Olivia] and her siblings at risk for abuse." Finally, Dr. Agrawal recommended a parenting evaluation for defendant.

On June 6, the Division substantiated the sexual assault allegations against B.C. and concluded that the case would be litigated.[4] That same day, the Division filed a verified complaint for care and supervision of Olivia, Brandon, and Nicole. The Division did not substantiate claims of abuse and neglect against defendant, but named her for dispositional purposes only. At the hearing on the return date of the order to show cause, counsel for the Division reported that while defendant continued to assert that she did not believe Olivia, defendant would support her. Counsel further confirmed that the

---

[4] B.C was subsequently indicted and charged with aggravated sexual assault of a minor and endangering the welfare of a child. At oral argument we were informed the trial was scheduled for April 2014. We are unaware of the disposition of the criminal proceedings.

Division's complaint did not allege any claims against defendant and that it was not proceeding against defendant. The court ordered that defendant retain legal and physical custody of Brandon and Nicole, but ordered physical custody of Olivia to continue with her grandmother.[5]

The fact-finding trial against B.C. commenced as scheduled before a different judge. After opening statements and twenty to thirty minutes of testimony by the Division caseworker, the court became concerned regarding defendant's expressed disbelief of Olivia's allegation of sexual abuse. The judge halted the proceedings and questioned "whether defendant's treatment of the child rose to abuse or neglect." Because defendant was present in court to observe the proceedings, the judge called counsel to sidebar where the following colloquy ensued:

> THE COURT: Counsel, would you approach for a minute. Everyone. I don't know the case, I don't read the case purposely. Would you agree that I can find against [defendant]?
>
> [DIVISION'S COUNSEL]: Yes, you could.

The judge summoned defendant's attorney to the courtroom. When she appeared, the following colloquy occurred:

> THE COURT: Okay. . . . We are back on the record. . . . We broke a few minutes ago and I asked to have [defendant's counsel]

---

[5] Olivia began staying with her grandmother on May 25, with defendant's consent.

come over to the court. . . . Thank you very much for responding so promptly.

[DEFENSE COUNSEL]: You're welcome, Judge.

THE COURT: It's my understanding that the Division has substantiated [B.C.] for sexually abusing his stepdaughter. But the Division did not substantiate [defendant] for abuse or neglect.

We heard about a half hour worth of testimony and my question was to counsel . . . if I hear any more testimony and we stopped testimony, if I heard testimony that was sufficient to find that [defendant] had abused or neglected her children[] [w]hether I had the authority to do that. I think I do. I think it is this [c]ourt's duty and mandate to protect children. So this is why I've asked you to come over and participate in this trial.

. . . .

THE COURT: Just so you know, and you'll be able to listen to the transcript of the trial, I asked [defendant] . . . [w]hy she was here [and w]hether she was excused from the trial, because I didn't read the case prior to the trial so that I get a fresh impression. And [defendant] indicated that she was excused from the trial, you didn't know that she was . . . here, you expected that she wouldn't attend, is that correct?

[DEFENSE COUNSEL]: Correct.

. . . .

[DEFENSE COUNSEL]: . . . [t]he Division was not seeking a stipulation or a fact-finding against my client. However, your Honor, . . . and now it is my understanding that the [c]ourt has heard a little bit of testimony and feels that perhaps sua sponte,

there might be some sort of finding that the [c]ourt would make in such a situation despite the fact that the Division is not proceeding against my client. However, I would have to object to the [c]ourt, first of all, considering a sua sponte finding of abuse and neglect against my client at any point if the Division is not seeking one. And especially in this particular situation because . . . certainly if my client was on notice from the very beginning of the case, the Division had substantiated her and/or was seeking a finding or a stipulation against her, I as her attorney, and she even, would have proceeded in a totally different way with the entire matter from the very beginning.

. . . .

So on behalf of my client, and in light of the fact that there's already been [twenty] minutes of testimony, I must, on behalf of my client, move for a mistrial at this time because my client has not had any notice [that the Division was seeking a finding of abuse and neglect against her]. . . .

. . . .

Judge, [I'm] sort of in a vacuum because I've just been called in only 10 minutes ago, or 15 minutes ago, and been told that the [c]ourt wants to proceed. So again I move for a mistrial. I would also like all of the documents and the facts upon which the Division, or the [c]ourt, is seeking a finding against my client.

. . . .

THE COURT: Let me explain what's happening here.

. . . .

THE COURT: I'm not proceeding against your client. I'm not adversarial to your client. This is the [c]ourt. I heard testimony for about 20 minutes or half hour at which point I was concerned that at least that testimony may lead this [c]ourt to decide, after I've heard all of the competent testimony, that [defendant] abused or neglected her children.

. . . .

THE COURT: At [this] point I [thought] due process required you to be present and you to be informed of what was happening and we would determine how to proceed. Parents certainly have a liberty interest, a fundamental liberty interest, to their children. Children also have a fundamental interest in being safe and protected. This [c]ourt is charged with protecting children. And I think . . . I would abdicate my duties if I were to proceed with a trial and hear facts and find or determine or think that a child has been abused or neglected and ignore that and leave that child at risk. So I have made no determination. I've heard enough facts that I think you should be involved in this case. Your application for a mistrial is denied. I think this can be corrected by due process.

I will give an adjournment today. You can have all the time you need to prepare your aspect of the trial. If you [would] like you can listen to the transcript. I think you have to. There's only about [twenty] minutes of testimony from the caseworker. You can hear that testimony. Nobody has even started cross-examination . . . . This is a highly unusual situation.

In January 2012, the same judge started the fact-finding trial anew. The caseworker who testified in the earlier

proceeding was unavailable as she left the Division's employ. During the six-day trial that ended in June 2012, the Division presented the testimony of Olivia, her school guidance counselor, her therapist, and the Division's supervising family services specialist. The Law Guardians did not present any witnesses, and neither defendant nor B.C. testified.

At the close of trial, the Division and Law Guardians argued for a finding of abuse against B.C. The judge issued a written decision finding that both defendant and B.C. abused and neglected Olivia. While acknowledging the Division had not substantiated defendant for abuse or neglect, the judge rejected the argument that defendant's due process rights were violated, concluding her "due process rights were preserved by adjourning the matter to provide [her counsel] with additional time to prepare for trial."

After assessing the testimony of the witnesses and the documentary evidence, the trial judge determined that defendant's disbelief in Olivia's allegation "immediately placed the child in the untenable position of feeling responsible for B.C.'s arrest and turmoil that resulted from her disclosure." The judge concluded that defendant neglected Olivia's "emotional needs and exacerbated the abuse inflicted by [B.C.]." Finally, the judge found there was "sufficient evidence for an

10                                    A-1045-12T4

independent finding, absent the Division's substantiation, to support a finding by a preponderance of the evidence that [defendant] emotionally abused and neglected [Olivia] as defined in N.J.S.A. 9:6-8.21(c)(4)(b)." The trial court filed an order that provided that B.C. sexually abused Olivia and defendant "neglected the minor's emotional needs."

After dispositional hearings, the judge ordered Olivia returned to defendant, and terminated the litigation. This appeal followed.

## II.

Defendant argues (1) the trial court exceeded its statutory authority and failed to comport with defendant's due process protections; (2) the finding of abuse or neglect was not supported by the evidence presented at trial; and (3) the judge demonstrated an improper lack of impartiality by presiding over the trial.

The Division responds that defendant's contentions ignore the State's parens patriae role and obligation to act in the best interests of children. Further, the Division argues that defendant had notice at the outset of the case when she was named in the verified complaint. The Law Guardian for Olivia agrees with the State and urges us to affirm, while the Law Guardian for the younger children urges us to reverse.

We first address defendant's due process claims. Defendant contends the court erred by ordering sua sponte a Title Nine fact-finding hearing when the complaint did not allege any claims of abuse or neglect against her. According to defendant, she had no notice that the trial court would consider making an adverse finding against her. The State responds that neither Title Nine nor any applicable case law prohibits a trial judge from making a finding of abuse or neglect against a named defendant even though none has been made by the Division.

Our analysis begins with a review of the applicable legal principles. It is axiomatic, that parents have a fundamental constitutional right to raise their children without undue interference from the State. N.J. Div. of Youth & Family Servs. v. E.P., 196 N.J. 88, 102 (2008). But that right is tempered by the State's parens patriae responsibility to protect children from serious physical and psychological harm, even where the child's parent is the source of the harm. N.J. Div. of Youth & Family Servs. v. A.R.G., 179 N.J. 264, 286 (2004); see In re Guardianship of K.H.O., 161 N.J. 337, 347 (1999)). At a minimum, "due process requires that a parent charged with abuse or neglect have adequate notice and opportunity to prepare and respond." N.J. Div. of Youth & Family Servs. v. T.S. 429 N.J. Super. 202, 213 (App. Div. 2013) (citation and internal

quotation marks omitted); see also N.J. Div. of Youth & Family Servs. v. B.M., 413 N.J. Super. 118, 126-27 (App. Div. 2010) (noting that a defendant must be apprised by such notice of the matters at issue and be afforded an "adequate opportunity" to respond and prepare for trial).

The child protection statute provides that "[a]ny person having reasonable cause to believe that a child has been subjected to child abuse or acts of child abuse shall report the same immediately to the [Division] by telephone or otherwise." N.J.S.A. 9:6-8.10. Further, N.J.S.A. 9:6-8.34(e), provides that a Title Nine action may be originated by certain enumerated persons, including "[a] person on the court's direction."

Following an investigation, the Division initiates the civil action seeking an adjudication of abuse or neglect by filing a complaint in the Family Part, pursuant to N.J.S.A. 9:6-8.33. The complaint must adequately notify a defendant of all charges. See N.J. Div. of Youth & Family Servs. v. P.W.R., 205 N.J. 17, 36-37 (2011).

The fact-finding hearing is a critical element of the abuse and neglect process, as it is at that point the Division must prove its allegations by a preponderance of the evidence. N.J. Div. of Youth & Family Servs. v. R.M., 411 N.J. Super. 467, 474-75 (App. Div.), certif. denied, 203 N.J. 439 (2010).

Accordingly, the fact-finding hearing must be conducted "'with scrupulous adherence to procedural safeguards.'" N.J. Div. of Youth & Family Servs. v. G.M., 198 N.J. 382, 401 (2009) (quoting A.R.G., supra, 179 N.J. at 286).

Following our review, we conclude the order as to defendant must be vacated. First, we determine that the trial judge failed to scrupulously safeguard defendant's due process protections. Second and more important, the judge, after directing the Division to focus on defendant's conduct as violating the statute, was no longer an independent fact-finder; she should have recused herself, and transferred the case to another Family Part judge.

Here, the Division had determined after a full investigation that it had insufficient evidence to support a complaint of abuse or neglect against defendant. Nevertheless, the court stated, without prior notice and after only several minutes of testimony, that it had heard enough facts to order defendant to be "involved" in the case and ordered the case to be tried against defendant as well as B.C. In its sua sponte ruling, the court explained it was exercising its parens patriae responsibility to protect the child. Yet, in doing so, the court disregarded long-standing due process principles that require a party in a judicial hearing receive notice defining

14

the issues and an adequate opportunity to prepare and respond. B.M., supra, 413 N.J. Super. at 126. Here, the Division never amended its complaint to inform defendant of the factual basis supporting a claim that she caused Olivia to be an abused or neglected child. Further, the judge's general comments that "testimony may lead this [c]ourt to decide . . . that [defendant] abused or neglected her children" is insufficient to satisfy the due process notice requirement.

This is not to say that the due process errors could not have been corrected. The law permits the judge to refer concerns to the Division, pursuant to N.J.S.A. 9:6-8.34, or any person to originate a proceeding under N.J.S.A. 9:6-8.10. However, that did not occur in this case. As suggested by the Deputy Attorney General's assent when the judge first presented the issue, the Division could have reopened its investigation and amended the complaint to include allegation of conduct amounting to abuse or neglect against defendant. Despite the judge's continuation of the proceeding, the Division did not do so.

Importantly, following the Division's presentation of evidence in a fact-finding hearing, if the judge determined defendant's disbelief of the accuracy of Olivia's assertions proved problematic to the child's emotional well-being,

safeguards could have been put in place during dispositional hearings, such as continuing therapeutic intervention between parent and child or individual counseling directed to aid defendant's understanding of the effect of her conduct on Olivia.[6] We note the record suggests defendant must have resolved her initial rejection of Olivia's assertions because the child was returned to her care.

We are convinced that the procedures employed at the trial level were fundamentally unfair and significantly deprived defendant of her due process rights. Hence, we conclude the court's determination of abuse or neglect against defendant cannot stand.

Next, defendant asserts the events and proceedings created an appearance of judicial bias. We agree. The court's sua sponte action coupled with its continued oversight of the fact-finding trial gave the appearance a lack of impartiality in the proceeding.

Rule 1:12-1 provides that a judge shall disqualify himself, or herself, on his or her own motion and not sit in a matter for the reasons contained in the rule, including "when there is any

---

[6] We are not suggesting that the evidence in this case would have been sufficient to warrant an amended complaint or a finding of abuse or neglect. Indeed, because of our disposition we need not reach that issue.

other reason which might preclude a fair and unbiased hearing and judgment, or which might reasonably lead counsel or the parties to believe so." R. 1:12-1(g). In our view, the judge formed an initial impression of defendant's conduct despite the Division's decision not to pursue defendant in this matter and the court's continued oversight over the ensuing trial, created an appearance of bias. "[T]he mere appearance of bias may require disqualification" upon a reasonably objective belief that the proceeding was unfair. Panitch v. Panitch, 339 N.J. Super. 63, 67 (App. Div. 2001) (quoting State v. Marshall, 148 N.J. 89, 279, cert. denied, 522 U.S. 850, 118 S. Ct. 140, 139 L. Ed. 2d 88, (1997)). In this matter, the court clearly did not regard its actions as a disqualifying circumstance. However, we conclude it should have. It was inappropriate for the judge to preside over the fact-finding trial under these circumstances. The trial should have been reassigned to another Family Part judge.

We reverse the July 16, 2012 order as to defendant. Our disposition makes it unnecessary for us to address any remaining contentions.

Reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION