# **RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0213-15T3

NEW JERSEY DIVISION OF
CHILD PROTECTION AND
PERMANENCY,

    Plaintiff-Respondent,

v.

C.D.,

    Defendant,

and

R.F.,

    Defendant-Appellant.

_____

IN THE MATTER OF A.D.,

    Minor.

_____

        Submitted February 16, 2017 — Decided  March 22, 2017

        Before Judges O'Connor and Whipple.

        On appeal from Superior Court of New Jersey,
        Chancery Division, Family Part, Essex County,
        Docket No. FN-07-288-13.

Joseph E. Krakora, Public Defender, attorney for appellant (Laura M. Kalik, Designated Counsel, on the brief).

Christopher S. Porrino, Attorney General, attorney for respondent (Andrea M. Silkowitz, Assistant Attorney General, of counsel; Thomas Ercolano, III, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minor (Danielle Ruiz, Designated Counsel, on the brief).

PER CURIAM

Defendant father, R.F., appeals from a May 3, 2013 Family Part order finding he abused or neglected his child. Having considered R.F.'s arguments in light of the record and applicable legal standards, we affirm.

R.F. and C.D. are the parents of A.D. On January 13, 2013, the Division of Child Protection and Permanency (the Division) received a referral from the Newark Police Department because A.D., then five years old, had what appeared to be a slap mark on her face. That night, R.F. went to the 17th Street police station to report C.D. had jumped on and was banging on his car when he picked A.D. up from C.D.'s home. R.F. left A.D. in the car with his sister when he went into the 17th Street station. When the officer declined to do anything about the incident, R.F. left and went to the Clinton Street police station.

A-0213-15T3

At the police station, he brought A.D. inside with him to continue his complaint about C.D. When he removed the child's hat, R.F. showed the officer a mark on A.D.'s face. The mark consisted of red scratches that were five inches in length and two inches in width. The officers referred R.F. back to the 17th Street station, and the police called the Division. The police also called C.D., who came to the 17th Street station. A Division Special Response Unit (SPRU) worker responded to the station at around 2:15 a.m. and spoke with C.D., who recounted she and R.F. argued when R.F. arrived at her home to take her to work. A.D. was in the car while R.F. and C.D. argued. C.D. refused to get into R.F.'s car because R.F.'s sister was in the front seat. C.D. decided to walk to catch a bus to work, but realized she would not be able to get there in time, so she called R.F. to come back to get her. When she was about to get in the car, R.F. pulled away. C.D. reported she was dragged before R.F. stopped the car. The SPRU worker noted C.D.'s jeans were dirty with black skid marks along the front. C.D. informed the police of the incident.

The SPRU worker examined A.D. and observed red linear marks on the upper left side of A.D.'s face, which resembled a hand. The left side of her face was slightly swollen, giving the appearance the mark was fresh. A.D.'s left eye was slightly bloodshot. With the assistance of C.D., the SPRU worker observed

A.D.'s body in the bathroom. She noticed a small scratch on her left thigh, but A.D. said she scratched herself. When asked how she got the mark on her face, A.D. shrugged her shoulders. When asked if she knew what happened, A.D. shook her head yes.

The SPRU worker spoke with R.F., who recounted he was out of state earlier in the day and had called C.D. to tell her he would not be back in time for her to take the bus, so he would drive her to work. According to R.F., he arrived at C.D.'s home around 10 p.m., and C.D. began "tweaking." R.F. left because C.D. yelled at him for "bringing people to her house," but C.D. kept phoning him. R.F. went back to pick her up but, when C.D. kept arguing, he left. R.F. went back for a third time, but after C.D. began yelling again, he drove off. R.F. claimed when he was stopped at a light, C.D. jumped on his car and began hitting it and "faked a fall." R.F. told the SPRU worker A.D. stated C.D. hit her; however, no one heard A.D. say who hit her.

According to another SPRU worker who interviewed A.D. that night, A.D. stated "the monster" hit her. The worker asked A.D. again about the mark, but A.D. refused to disclose who caused the injury. R.F. denied hitting his daughter and stated he believed C.D. hit A.D.

The SPRU worker informed both parents the Division would be executing an emergency removal and would take custody of A.D., as

there was an unexplained mark on her face. The Division's investigation summary listed C.D. as the alleged perpetrator, but the findings were deemed "substantiated-perp unknown." R.F. was not listed as an alleged perpetrator.

The Division filed an order to show cause and a verified complaint for custody against R.F. and C.D. on January 15, 2013. The complaint contained no specific allegations against R.F., but references were made to "parent(s) or guardian(s)." R.F. and C.D. both appeared at the hearing and were represented by counsel. The trial judge was satisfied the Division established the child had suffered such injuries as ordinarily would not be sustained but for the acts or omissions of parents or guardians. The judge also noted no one, besides R.F. and C.D., was with A.D., and she did not identify her abuser; thus, the burden shifted to defendants to come forward with evidence to establish non-culpability. The trial judge ordered the child placed in the immediate custody, care, and supervision of the Division.

The fact-finding hearing took place on May 3, 2013, at which the SPRU worker and C.D. testified. The worker testified about the January 13, 2013 referral, when R.F. brought A.D. into the police station because of what appeared to be a slap mark on her face. The worker recounted her interviews both C.D. and R.F. Specifically, C.D. told the worker she had been caring for A.D.

on Friday and Saturday until 10:00 p.m., when R.F. was supposed to come pick her up but was late. C.D. told the worker no one else was caring for A.D. at that time. The worker described her observations of A.D.'s face and how it "resembled like a hand mark as if she was slap[ped]," and A.D.'s left eye was bloodshot. The worker testified both C.D. and R.F. denied causing the mark.

C.D. testified she dressed A.D. prior to R.F. coming to pick her up and observed no mark on her face. C.D. had the opportunity to see A.D.'s face because C.D. put a hat on A.D.'s head, put her coat on, and zipped it up. R.F. placed A.D. in her car seat.

R.F. presented no witnesses and did not testify. During R.F.'s closing arguments, his counsel noted the Division made no allegations against R.F. The trial judge asked R.F.'s counsel, "If the Court determines he engaged in abuse and neglect, am I bound by the Division - by the Division's determination?" R.F.'s counsel conceded, "No, you're not . . . you have discretion." Counsel for C.D. argued the court should make a finding of abuse and neglect against R.F. because there is no evidence C.D. injured their child. The law guardian argued a finding should be made against "both or either."[1]

---

[1] When pressed further, the law guardian stated based upon the evidence, she would lean toward finding against the mother but believed res ipsa loquitur should apply in this case.

A-0213-15T3

The Division noted C.D. was entitled to a review of the Division's finding of substantiated abuse and neglect of A.D. However, when pressed by the trial judge for due process concerns regarding the absence of a finding of substantiation against R.F., the Deputy Attorney General acknowledged, "There's not a due process concern due to the fact . . . the [c]ourts are charged with an independent ability and duty to make findings of abuse and neglect, whether or not the Division has entered a substantiation. That would require the Division then to amend their findings."

The trial judge found the pictures of A.D.'s face clearly demonstrated the child suffered injuries satisfying N.J.S.A. 9:6-8.46(a)(2) and based upon the evidence in the record, found the injuries occurred while A.D. was in either the custody of C.D. or R.F. The trial judge found a limited number of persons could have caused the injury to the child and noted the burden had shifted to the defendants to present evidence to establish non-culpability. Based upon C.D.'s testimony, which the judge found credible, there was no bruising while A.D. was in her custody. Therefore, the trial judge found C.D. satisfied her burden of showing she did not abuse or neglect A.D. In contrast, the trial judge found R.F.'s account to the Division about A.D.'s injury was not credible, specifically the judge stated R.F.'s version "defie[d] common sense" and was "hard to believe." The trial

judge found R.F. had not satisfied his burden and made a finding he had abused and neglected A.D. The litigation was terminated on July 28, 2015. This appeal followed.

On appeal, R.F. requests we reverse the finding he abused or neglected A.D., arguing there is insufficient evidence to support this finding and the trial judge improperly shifted the burden of proof to him. We disagree.

Appellate courts "have a strictly limited standard of review from the fact-findings of the Family Part judge." N.J. Div. of Youth & Family Servs. v. I.H.C., 415 N.J. Super. 551, 577 (App. Div. 2010) (citing Cesare v. Cesare, 154 N.J. 394, 412-13 (1998)). We "defer to the factual findings of the trial court because it has the opportunity to make first-hand credibility judgments about the witnesses who appear on the stand; it has a feel of the case that can never be realized by a review of the cold record." N.J. Div. of Youth & Family Servs. v. M.C. III, 201 N.J. 328, 342-43 (2010) (quoting N.J. Div. of Youth & Family Servs. v. E.P., 196 N.J. 88, 104 (2008)). Moreover, "[b]ecause of the family courts' special jurisdiction and expertise in family matters, appellate courts should accord deference to family court factfinding." Cesare, supra, 154 N.J. at 413.

"Parents have a constitutionally protected right to maintain a relationship with their children." N.J. Div. of Youth & Family

Servs. v. M.M., 189 N.J. 261, 279 (2007) (citing In re Guardianship of K.H.O., 161 N.J. 337, 346 (1999)). A parent's right is not absolute; it must be balanced against the "State's parens patriae responsibility to protect the welfare of children." In re Guardianship of J.C., 129 N.J. 1, 10 (1992).

We consider the totality of the circumstances in abuse and neglect proceedings. N.J. Div. of Youth & Family Servs. v. P.W.R., 205 N.J. 17, 39 (2011). The standard in deciding whether a guardian has failed to exercise a minimum degree of care is one of gross negligence. G.S. v. Dep't of Human Servs., 157 N.J. 161, 178-79 (1999). The failure to exercise such a degree of care is "analyzed in light of the dangers and risks associated with the situation." N.J. Dep't of Children & Families v. R.R., 436 N.J. Super. 53, 58 (App. Div. 2014) (quoting G.S., supra, 157 N.J. at 181-82). There must also be proof the "parent 'unreasonably' inflicted harm." N.J. Div. of Child Prot. & Permanency v. Y.N., 220 N.J. 165, 180 (2014).

The Division bears the burden of establishing a prima facie case of abuse and neglect. Id. at 178-79. Additionally,

> proof of injuries sustained by a child or of
> the condition of a child of such a nature as
> would ordinarily not be sustained or exist
> except by reason of the acts or omissions of
> the parent or guardian shall be prima facie
> evidence that a child of, or who is the

responsibility of such person is an abused or neglected child.

[N.J.S.A. 9:6-8.46(a)(2).]

When the Division establishes a child has sustained an injury that would not have occurred but for the act or omission of a parent or guardian, but the Division cannot show not who caused the injury, we apply either conditional res ipsa loquitur or traditional res ipsa loquitur. In In re D.T., 229 N.J. Super. 509 (App. Div. 1988), we applied the conditional res ipsa loquitor rule of Anderson.[2] We held:

> [where] a limited number of persons, each having access or custody of a [child] during the time frame when a[n] [] abuse concededly occurred, no one else having such contact and the [child] being then and now helpless to identify her abuser . . . the burden would then be shifted, and such defendants would be required to come forward and give their evidence to establish non-culpability.
>
> [D.T., supra, 229 N.J. Super. at 517.]

In the present case, there is no dispute A.D. suffered an injury. Based upon testimony and the pictures of A.D., the trial judge found she suffered an injury that would not have occurred absent an act or omission of her parents or guardian. See N.J.S.A. 9:6-8.46(a)(2). The testimony of the Division workers who observed

---

[2] Anderson v. Somberg, 67 N.J. 291 (1975), certif. denied, 423 U.S. 929, 96 S. Ct. 279, 46 L. Ed. 2d 258 (1975).

the child's injuries and the pictures are competent, material, and relevant evidence of A.D.'s abuse or neglect.

Because the injury occurred while A.D. was either in the custody of R.F. or C.D., the trial judge correctly shifted the burden to the parents under conditional res ispa loquitur pursuant to In re D.T. A.D. was in the custody of only C.D. or R.F., and A.D. did not name her abuser. C.D. and R.F. each bore the burden to come forward with evidence to rebut the Division's presumption of abuse and neglect. C.D. rebutted the presumption, but R.F. did not.

R.F. argues he did not know he needed to present testimony and was unaware of the burden shifting. He claims his due process rights were violated because the court failed to inform the parties the burden of proof might shift. However, the trial judge specifically advised at the order to show cause hearing both defendants would have to come forward with evidence to establish non-culpability. R.F. was on notice of the potential for burden shifting in advance of the fact-finding.

R.F. argues his due process rights were violated because the complaint did not allege any specific claims against him, and he was not given any notice the Division intended to prosecute a finding against him.

Due process requires a parent charged with abuse and neglect "have . . . adequate notice and opportunity to prepare and respond." N.J. Div. of Youth & Family Servs. v. T.S., 429 N.J. Super. 202, 213 (App. Div. 2013) (citing N.J. Div. of Youth & Family Servs. v. B.M., 413 N.J. Super. 118, 126-27 (App. Div. 2010)). Notice must "reasonably apprise the party of the charges." B.M., 413 N.J. Super. at 127 (quoting H.E.S. v. J.S.C., 175 N.J. 309, 321-22 (2003)). Because of the significant liberty interests at stake, the fact-finding hearing "must be conducted 'with scrupulous adherence to procedural safeguards.'" N.J. Div. of Youth & Family Servs. v. G.M., 198 N.J. 382, 401 (2009) (quoting N.J. Div. of Youth & Family Serv. v. A.R.G., 179 N.J. 264, 286 (2004)).

R.F. asserts he was denied vital procedural protections because the issues litigated at the fact-finding hearing were substantially different from what was in the complaint. However, the complaint lists R.F. as the father of A.D. and includes the alleged perpetrator of A.D.'s abuse as "parent(s) or guardian(s)." R.F. had notice he was named in the complaint, and it was not determined which parent abused A.D. While the investigation summary substantiated C.D. for abuse, the findings also stated, "the allegation is substantiated with an unknown perpetrator." The Division presented all of the same facts detailed in the

complaint at both the order to show cause and the fact-finding hearings, where R.F. was represented by counsel.

In New Jersey Division of Youth & Family Services v. P.C., we found a defendant's due process rights were violated when the trial judge sua sponte found she emotionally abused or neglected her daughter when the allegations in the Division's complaint only addressed her ex-husband's sexual abuse of the child.  439 N.J. Super. 404, 413-14 (App. Div. 2015).  The Division named the mother as a defendant for dispositional purposes, but at trial, the judge found there was enough evidence to make a finding against her. Id. at 406.

We reversed because the finding violated "long-standing due process principles that require a party in a judicial hearing receive notice defining the issues and an adequate opportunity to prepare and respond."  Id. at 414.  Here, the complaint sets forth a concise premise either R.F. or C.D. struck A.D.  R.F.'s due process rights were not violated; he had sufficient notice of the manifest allegations in the complaint.  The fact C.D. was originally identified as an alleged perpetrator is inconclusive

because the Division's finding was "substantiated-perpetrator unknown."[3]

Lastly, we find no merit in R.F.'s argument the trial court's finding against him gave the appearance of judicial bias because the trial court focused its attention on him during closing arguments. Pursuant to Rule 1:12-1(g), a judge should disqualify him or herself "when there is any other reason which might preclude a fair and unbiased hearing and judgment, or which might reasonably lead counsel or the parties to believe so." Our review of the record discloses no support for the claim the judge was biased.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[3] When a Division investigator finds multiple alleged perpetrators could have caused the injury to the child, the investigator must obtain circumstantial evidence that identifies the most likely perpetrator. N.J.A.C. 3A:10-2.4(d). The Department representative then must evaluate the available information and determine whether abuse or neglect occurred, making "every reasonable effort to identify the perpetrator." N.J.A.C. 3A:10-7.3(a). Based upon A.D.'s injuries, the Division was able to substantiate abuse or neglect, pursuant to N.J.A.C. 3A:10-7.3(c)(1), but was unable to conclude whether C.D. or R.F. perpetrated the abuse and thus found the abuse to be "substantiated-perpetrator unknown."

A-0213-15T3