RECORD IMPOUNDED

 NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-4799-14T1
 A-4769-15T1
 A-5090-15T1

NEW JERSEY DIVISION OF CHILD
PROTECTION AND PERMANENCY,

 Plaintiff-Respondent,

v.

C.C.,

 Defendant-Appellant.
___________________________________

IN THE MATTER OF J.C., Ti.B., and
Ty.B., Minors.
___________________________________

NEW JERSEY DIVISION OF CHILD
PROTECTION AND PERMANENCY,

 Plaintiff-Respondent,

v.

C.C. and A.B.,

 Defendants-Appellants.
___________________________________

IN THE MATTER OF THE GUARDIANSHIP
OF J.C., Ti.B., and Ty.B., Minors.
___________________________________

 Submitted May 9, 2017 – Decided June 29, 2017
 Before Judges Ostrer, Leone and Moynihan.

 On appeal from the Superior Court of New
 Jersey, Chancery Division, Family Part, Hudson
 County, Docket Nos. FN-09-265-14 and FG-09-
 256-15.

 Joseph E. Krakora, Public Defender, attorney
 for appellant C.C. (Kisha M. Hebbon,
 Designated Counsel, on the briefs).

 Joseph E. Krakora, Public Defender, attorney
 for appellant A.B. (Daniel DiLella, Designated
 Counsel, on the briefs).

 Christopher S. Porrino, Attorney General,
 attorney for respondent (Andrea M. Silkowitz,
 Assistant Attorney General, of counsel;
 Jonathan Villa, Deputy Attorney General, on
 the brief in A-4799-14; Lauren J. Oliverio,
 Deputy Attorney General, on the brief in A-
 4769-15 and A-5090-15).

 Joseph E. Krakora, Public Defender, Law
 Guardian, attorney for minors J.C., Ti.B. and
 Ty.B. (James J. Gross, Designated Counsel, on
 the briefs).

PER CURIAM

 In these three children-in-court cases, we affirm the trial

court's August 25, 2014 decision, finding that defendant-mother

C.C. neglected her three children; and the court's June 29, 2016

termination of C.C.'s parental rights and those of defendant-

father A.B. Since October 2013, the children, J.C., Ti.B. and

 2 A-4799-14T1
Ty.B. — born in 2010, 2012 and 2013 — have lived with their

maternal grandmother M.C., who wishes to adopt them.1

 In summary, while C.C. was the children's sole caretaker, she

repeatedly left the children alone or with unwilling or unnotified

adults. As a result, the children were removed and placed with

M.C., after A.B. was unable to assume the role of custodial parent.

At the Title 9 fact-finding hearing, the Division of Child

Protection and Permanency presented evidence of three separate

incidents where C.C. left the children home alone. At this

hearing, the Division called M.C.; C.C.'s adult brother, G.C.; and

a Division caseworker. C.C. did not testify or call witnesses.

 In the months that followed the fact-finding hearing, the

parents were generally non-compliant with services and failed to

complete psychological evaluations. The parents' visitation was

inconsistent and both parents allowed extended periods of time to

pass without visitation. The Division's plan for the family

eventually changed from reunification to termination.

 The Division presented its case for termination through the

testimony of M.C. and the caseworker. A.B. did not appear at the

guardianship trial and his attorney offered no witnesses. C.C.

1
 For purposes of this opinion, we consolidate the abuse or neglect
appeal with the parents' respective termination-of-parental-rights
appeals, which were already consolidated.

 3 A-4799-14T1
testified in her own defense, and offered the testimony of her

paramour. Neither the Division nor the parents offered expert

testimony.

 The Law Guardian now agrees with the Division that C.C.

neglected the children. The Law Guardian also supports the finding

that the Division met its burden under the best-interests test for

terminating the parents' rights.

 I.

 In the abuse or neglect appeal, C.C. presents the following

issues:

 A. C.C.'s Due Process Rights Were Violated
 By a Lack Of Sufficient Notice Of DCPP's
 Intent To Seek a Finding Of Abuse and Neglect
 Based Upon The Children Being Left At Home
 Alone Or Unsupervised.

 B. The Trial Court Erred In Failing To
 Exercise Its Discretion To Dismiss The Title
 Nine Action and Continue The Matter Under
 Title Thirty.

 At the Title 9 hearing, the trial judge found that C.C.

neglected the children by leaving them "home unsupervised on

[three] occasions [and] thereby failed to exercise a minimum degree

of care putting the children at a substantial risk of harm." The

court also found C.C. at other times left the children with

unwilling or unknowing caretakers in the home, which included her

mother, M.C.; her adult brother, G.C.; and homemakers placed by

 4 A-4799-14T1
the Division in the home after C.C. had previously left the

children. Also in the home were C.C.'s younger siblings, who were

then eighteen and thirteen years old. However, the judge found

these incidents, although inexcusable, did not constitute neglect

because the adults' and teenagers' presence countered the risk of

harm.

 In support of its "home alone" findings, the court credited

the testimony of G.C., who reported finding the three children by

themselves in the house after he returned from work; and the

testimony of M.C., who experienced a similar incident, and also

once found two of the children in the bathtub alone, while C.C.

was standing outside the house on the sidewalk.

 C.C. contends that because the Division's complaint did not

specify the three "home alone" incidents in its verified complaint

for custody, it violated her due process right to fair notice. We

disagree.

 A defendant's due process rights include a right to "notice

defining the issues and an adequate opportunity to prepare and

respond." J.D. v. M.D.F., 207 N.J. 458, 478 (2011) (internal

quotation marks and citation omitted). "There can be no adequate

preparation [for trial] where the notice does not reasonably

apprise the party of the charges, or where the issues litigated

at the hearing differ substantially from those outlined in the

 5 A-4799-14T1
notice." N.J. Div. of Youth and Family Servs. v. B.M., 413 N.J.

Super. 118, 127 (App. Div. 2010) (internal quotation marks and

citation omitted); see also N.J. Div. of Youth & Family Servs. v.

P.C., 439 N.J. Super. 404, 413 (App. Div. 2015) (stating an abuse

or neglect complaint must adequately notify the defendant of all

charges).

 In B.M., supra, we reversed a judgment terminating parental

rights where the Division introduced at trial, without prior

notice, an expert report asserting the child was born with fetal

alcohol syndrome. 413 N.J. Super. at 127. Prior thereto, the

Division had focused on the newborn's positive test for cocaine,

the mother's history of drug abuse, and her inability to care for

her other children. Id. at 123. Several factors led to our

conclusion of harmful error. We noted the evidence came as a

surprise. Id. at 127. The court's repeated use of the report

before it was offered in evidence indicated an objection would

have been futile. Id. at 128. The defendant had no opportunity

to challenge the expert's report with an expert of her own. Id.

at 127. And the report played a significant role in the court's

findings and the trial outcome, because the evidence of cocaine

in the newborn's system, without more, fell short of proving harm

to child, while proof of fetal alcohol syndrome did establish

harm. Id. at 128.

 6 A-4799-14T1
 In J.D., supra, a case under the Prevention of Domestic

Violence Act, N.J.S.A. 2C:25-17 to -35, the Court reversed a final

restraining order based on a due process violation, where the

plaintiff presented evidence of prior acts of domestic violence

that she did not include in her complaint. 207 N.J. at 478-82.

Notably, the defendant inartfully objected and sought a

continuance, stating he was unprepared to meet the new allegations.

Id. at 468-69. However, no continuance was granted. Id. at 469.

 The Court recognized that evidence at trial may often go

beyond that set forth in the complaint. Id. at 479. "That reality

is not inconsistent with affording defendants the protections of

due process to which they are entitled." Ibid. A court must

recognize that if it allows expansion of the allegations in the

complaint, "it has permitted an amendment to the complaint and

must proceed accordingly." Id. at 479-80. The court must also

consider whether the expansion prejudices the defendant, and

whether an adjournment or other remedy is warranted.

 To be sure, some defendants will know full
 well the history that plaintiff recites and
 some parties will be well-prepared regardless
 of whether the testimony technically expands
 upon the allegations of the complaint.
 Others, however, will not, and in all cases
 the trial court must ensure that defendant is
 afforded an adequate opportunity to be
 apprised of those allegations and to prepare.

 [Id. at 480.]

 7 A-4799-14T1
 Although neither B.M. nor J.D. addressed Rule 4:9-2, those

decisions are consonant with the principles set forth in the rule,

which permits the amendment of complaints to conform to the

evidence. First, the failure to object tends to support permitting

a party to introduce new issues or claims. "When issues not raised

by the pleadings and pretrial order are tried by consent or without

the objection of the parties, they shall be treated in all respects

as if they had been raised in the pleadings and pretrial order."

R. 4:9-2 (emphasis added). Second, a formal amendment is not

necessary. "Such amendment of the pleadings and pretrial order

as may be necessary to cause them to conform to the evidence and

to raise these issues may be made upon motion of any party . . . ;

but failure so to amend shall not affect the result of the trial

of these issues." Ibid. (emphasis added).

 Finally, if there is an objection, then the court should

freely allow amendment if the objecting party would not be

prejudiced, and should grant a continuance if that would be

sufficient to enable the objecting party time to prepare.

 If evidence is objected to at the trial on the
 ground that it is not within the issues made
 by the pleadings and pretrial order, the court
 may allow the pleadings and pretrial order to
 be amended and shall do so freely when the
 presentation of the merits of the action will
 be thereby subserved and the objecting party
 fails to satisfy the court that the admission
 of such evidence would be prejudicial in

 8 A-4799-14T1
 maintaining the action or defense upon the
 merits. The court may grant a continuance to
 enable the objecting party to meet such
 evidence.

 [Ibid.]

See Kernan v. One Wash. Park Urban Renewal Assocs., 154 N.J. 437,

457 (1998) (stating power of amendment should be liberally

exercised absent undue prejudice).

 Applying these principles, we discern no basis to disturb the

court's finding of neglect on due process grounds. The verified

complaint did not include the three "home alone" incidents among

the many specifically identified in the complaint and described

in Division documents. However, C.C. was generally apprised of

potential proofs that the children were left alone. In compliance

with the court's pre-trial order, the Division advised the court

and defendant that it sought a finding that C.C. "repeatedly failed

to arrange appropriate supervision for her children with a willing

caretaker" and a separate finding that "if an appropriate caretaker

was available, [C.C.] failed to notify that individual that they

were being left in a caretaking role . . . ." The first requested

finding encompassed leaving the children home alone when no

appropriate caretaker was available.

 Furthermore, C.C.'s counsel did not object to G.C.'s or M.C.'s

testimony about the "home alone" incidents. C.C. claims she did

 9 A-4799-14T1
object, mistakenly relying on her trial counsel's objection to a

line of questioning involving an incident when one of the children

apparently fell out of bed and M.C. had to assist in C.C.'s

absence. First, the questioning did not involve one of the "home

alone" incidents. Second, defense counsel objected on relevance,

not due process, grounds. The Division defended the line of the

questioning, contending it demonstrated that an unwilling adult's

presence did not obviate all risk of harm.

 Unlike in J.D., C.C. did not seek an adjournment, nor did she

assert that she was unprepared to respond to the allegations.

Although C.C. did not testify or call witnesses, her counsel

vigorously cross-examined the two witnesses, noting that neither

had previously conveyed these allegations to the Division. Also,

unlike the defendant in B.M., C.C. did not need help from an expert

to meet unanticipated testimony. In sum, absent proper objection

and a showing of undue prejudice, we reject C.C.'s contention that

the neglect finding should be set aside on due process grounds.

 C.C.'s remaining argument that there was insufficient

evidence to support the neglect finding lacks sufficient merit to

warrant extended discussion. R. 2:11-3(e)(1)(E). We defer to the

trial judge's fact findings that are rooted in the judge's

familiarity with the case, opportunity to make credibility

judgments based on live testimony, and expertise in family matters.

 10 A-4799-14T1
Cesare v. Cesare, 154 N.J. 394, 411-13 (1998). We will affirm a

Family Part's decision when substantial credible evidence in the

record supports the court's findings. N.J. Div. of Youth and

Family Servs. v. E.P., 196 N.J. 88, 104 (2008). When reviewing

abuse and neglect cases, we consider the totality of the

circumstances. N.J. Div. of Youth and Family Servs. v. P.W.R.,

205 N.J. 17, 39 (2011). However, we are not bound by the trial

court's legal conclusions. N.J. Div. of Youth & Family Servs. v.

I.S., 202 N.J. 145, 183 (2010).

 Given that deferential standard of review, we conclude there

was ample support for the trial judge's finding that C.C. failed

to exercise "a minimum degree of care . . . in providing [her

children] with proper supervision," and thereby created a

"substantial risk" of harm. See N.J.S.A. 9:6-8.21(c)(4)(b). C.C.

left her three children, all under five and the youngest under a

year old, home alone and, in one case, two of them alone in the

bathtub. That C.C. may have done so briefly, or had been close

by, but outside the residence, did not mitigate the risk.

 C.C.'s actions are far more egregious than those of the parent

in Department of Children and Families v. T.B., 207 N.J. 294

(2011), upon which she misplaces reliance. In a single isolated

incident, the mother in T.B. presumed — negligently — that the

child's grandparents were in the home, based on the presence of

 11 A-4799-14T1
their car in the driveway and their typical schedule. Id. at 309.

By contrast, there is no evidence that C.C. presumed the presence

of adults. Furthermore, unlike in T.B., C.C.'s actions were not

"totally out of the ordinary." Id. at 310. She left the children

home alone on three occasions, she repeatedly left the children

home with unwilling or unnotified adults, and she continued to

violate the Division's safety protection plan.

 Under the totality of these circumstances, the trial court

was justified in finding that C.C.'s conduct was "willful and

wanton" so as to support a finding of neglect. See G.S. v. Dep't

of Human Servs., 157 N.J. 161, 178 (1999); N.J. Div. of Youth and

Family Servs. v. A.R., 419 N.J. Super. 538, 543 (App. Div. 2011).

 II.

 We turn next to the guardianship appeal. "A parent's right

to enjoy a relationship with his or her child is constitutionally

protected." In re Guardianship of K.H.O., 161 N.J. 337, 346

(1999). In order to overcome this fundamental right, the Division

must satisfy the four-factor best interests test, as set forth

under Title 30, by clear and convincing evidence:

 (1) The child's safety, health, or development
 has been or will continue to be endangered by
 the parental relationship;

 (2) The parent is unwilling or unable to
 eliminate the harm facing the child or is
 unable or unwilling to provide a safe and

 12 A-4799-14T1
 stable home for the child and the delay of
 permanent placement will add to the harm.
 Such harm may include evidence that separating
 the child from his resource family parents
 would cause serious and enduring emotional or
 psychological harm to the child;

 (3) The division has made reasonable efforts
 to provide services to help the parent correct
 the circumstances which led to the child's
 placement outside the home and the court has
 considered alternatives to termination of
 parental rights; and

 (4) Termination of parental rights will not
 do more harm than good.

 [N.J.S.A. 30:4C-15.1(a).]

See also N.J. Div. of Youth & Family Servs. v. A.W., 103 N.J. 591,

604-11 (1986) (setting forth the standards of proof for termination

of parental rights cases). The four factors are interrelated.

K.H.O., supra, 161 N.J. at 348. Factors one and two in particular

overlap. In re Guardianship of DMH, 161 N.J. 365, 378-79 (1999).

 In their appeal from the June 2016 judgment terminating their

parental rights, C.C. and A.B. challenge the trial court's findings

regarding each of the four elements of the best interests test.

N.J.S.A. 30:4C-15.1(a)(1)-(4). Applying our deferential standard

of review, we reject these arguments and affirm substantially for

the reasons set forth in Judge Bernadette DeCastro's written

opinion. We limit ourselves to the following additional comments.

 13 A-4799-14T1
 In challenging the court's findings under factors one and

two, both defendants contend the Division failed to prove actual

or significant risk of harm. C.C. contends the court erred in

depreciating her trial testimony that she had obtained stable

housing and employment. A.B. argues the court gave undue weight

to his use of marijuana, housing instability, and poverty. We

disagree.

 "Serious and lasting emotional [and] psychological harm to

children as [a] result of the action or inaction of their

biological parents can constitute injury sufficient to authorize

the termination of parental rights." In re Guardianship of K.L.F.,

129 N.J. 32, 44 (1992). "A parent's withdrawal of that solicitude,

nurture, and care for an extended period is in itself a harm that

endangers the health and development of the child." DMH, supra,

161 N.J. at 379. In particular, "[t]he lack of a permanent, safe,

and stable home" may warrant termination of parental rights. Id.

at 383. The absence of physical abuse or neglect is not

conclusive; the court must also consider the potential for serious

psychological damage. A.W., supra, 103 N.J. at 605; N.J. Div. of

Youth & Family Servs. v. A.G., 344 N.J. Super. 418, 440 (App. Div.

2001), certif. denied, 171 N.J. 44 (2002); In re Guardianship of

R.G. and F., 155 N.J. Super. 186, 194 (App. Div. 1977).

 14 A-4799-14T1
 Prong two focuses on parental unfitness. K.H.O., supra, 161

N.J. at 352. This factor "is aimed at determining whether the

parent has cured and overcome the initial harm that endangered the

health, safety, or welfare of the child, and is able to continue

a parental relationship without recurrent harm to the child." Id.

at 348. "[T]he second prong may be met by indications of parental

dereliction and irresponsibility, such as the parent's continued

or recurrent drug abuse, the inability to provide a stable and

protective home, [and] the withholding of parental attention and

care . . . ." Id. at 353.

 Here, the record contains ample evidence supporting the trial

court's determination that the children will continue to be

endangered by the parental relationship, and that neither parent

is able to eliminate that danger and provide a safe and stable

home. For almost three years, the children remained in their

grandmother's care and custody, while neither C.C. nor A.B.

provided even "minimal parenting" to their children. See DMH,

supra, 161 N.J. at 379. A.B. declined to present himself as a

custodial parent when the children were first removed from C.C.'s

care in October 2013. Both parents allowed extended periods of

time to pass without seeing their children at all. M.C. testified

about the emotional impact that defendants' inconsistent visits

have had on the children. For instance, one child became upset

 15 A-4799-14T1
when C.C. left his birthday party, allegedly to get a gift from

her car, and never returned; and when A.B. failed to appear as

promised for a child's school field trip. Both C.C. and A.B.

failed to complete psychological evaluations or substance abuse

evaluations, despite numerous appointments. C.C. completed a

parenting skills program, but she did so more than a year-and-a-

half after it was ordered.

 We defer to Judge DeCastro's credibility determination, which

gave little weight to C.C.'s assertion that she achieved stability.

Notably, neither C.C. nor A.B. provided documentary proof of

employment, despite multiple court orders requiring it. We also

reject A.B.'s argument that the court placed undue weight on his

drug use and financial circumstances. The court's focus was on

A.B.'s inability to provide a safe and stable home.

 As for prong three, the record clearly supports the court's

determination that the Division made diligent efforts to provide

services for the parents. The court must assess the adequacy of

the Division's efforts "in light of all the circumstances of a

given case." DMH, supra, 161 N.J. at 393. The Division is only

required to provide reasonable services; a parent's failure to

become fit to care for his or her children "is not determinative

of the sufficiency of [the Division's] efforts . . . ." Ibid.

 16 A-4799-14T1
 The Division provided numerous services for the parents, but

defendants were largely non-compliant. In addition to the

parenting skills training that C.C. eventually completed, the

Division offered homemaker services to A.B., which he refused, and

to C.C., which she misused; substance abuse evaluations, which the

parties failed to complete or follow; and psychological and bonding

evaluations, which the parties failed to attend or complete. The

Division also provided each with monthly bus passes and case-aides

to personally drive them to scheduled appointments, and assisted

them in visiting their children.

 We discern no merit in C.C.'s argument that the Division was

obliged to increase visits or grant unsupervised visits, once she

secured stable housing. Before the children's removal in October

2013, C.C. repeatedly left them alone, or with unwilling or

unnotified adults. She failed to complete psychological and

substance abuse evaluations to demonstrate she was ready and fit

for unsupervised visits. She also failed to present documentary

proof of employment or her living situation. Under these

circumstances, the Division was not obliged to offer C.C.

unsupervised, overnight parenting time as part of its reasonable

efforts.

 We are also unpersuaded by A.B.'s argument that the Division

failed to consider his sisters as alternative caregivers to M.C.

 17 A-4799-14T1
The Division is obliged to search for, and assess "relatives who

may be willing and able to provide the care and support required

by the child." N.J.S.A. 30:4C-12.1(a). However, "there is no

presumption favoring the placement of a child with such relatives."

N.J. Div. of Youth and Family Servs. v. J.S., 433 N.J. Super. 69,

82 (App. Div. 2013), certif. denied, 217 N.J. 587 (2014).

Moreover, there is no evidence to suggest that either sister was

willing and able to care for the children.

 Lastly, both parents challenge the court's prong four finding

that termination of parental rights would not cause more harm than

good. Both highlight the fact that the Division did not offer an

expert opinion that compared their bonds with the children against

M.C.'s. Generally, "the [Division] should offer testimony of a

'well qualified expert who has had full opportunity to make a

comprehensive, objective, and informed evaluation' of the child's

relationship with both the natural parents and the foster parents."

N.J. Div. of Youth and Family Servs. v. M.M., 189 N.J. 261, 281

(2007) (citation omitted). However, defendants should not be

heard to complain about the absence of expert testimony, as they

obstructed the presentation of such evidence by their repeated

failure to submit to psychological evaluations. Cf. N.J. Div. of

Youth & Family Servs. v. A.R., 405 N.J. Super. 418, 440 (App. Div.

 18 A-4799-14T1
2009) (stating "we can envision very few scenarios in which

comparative evaluations would not be required").

 Some background here is necessary. C.C. appeared for an

initial session as part of a psychological evaluation by the

Division's expert, Robert J. Miller, II, Ph.D., but failed to

return for its completion or for a bonding evaluation. A.B. may

have appeared for a bonding evaluation, but not for a psychological

evaluation.2 M.C. appeared for the bonding evaluation. Dr. Miller

explained in his report that he could not offer opinions regarding

the parents' psychological or parental functioning due to their

lack of cooperation.

 At a pretrial hearing, the Division offered the report for

the sole purpose of demonstrating at trial the parents' lack of

cooperation. C.C.'s counsel objected to the admission of Dr.

Miller's opinions. A.B.'s counsel joined in a general objection

to any embedded hearsay in Division documents, which included Dr.

Miller's opinions. See N.J.R.E. 808. However, on the first day

2
 We note a discrepancy in the documentary record. According to
a January 13, 2016 contact sheet, a caseworker transported the
three children and A.B. to Dr. Miller's office for an evaluation
on January 7, 2016. However, Dr. Miller's April 9, 2016 "Forensic
Psychological and Bonding Evaluation" report listed A.B. as a "no
show" for January 7, 2016.

 19 A-4799-14T1
of trial, the deputy attorney general stated she did not intend

to offer Dr. Miller's report into evidence after all.3

 Notwithstanding this background, A.B. relies on Dr. Miller's

recorded impressions of the bonding evaluation with M.C. to support

his challenge of the Division's prong four showing. We reject the

argument because Dr. Miller's impressions were not in evidence.

Indeed, one way or another, both defense counsel objected to the

admission of Dr. Miller's opinions.

 In the absence of expert testimony, Judge DeCastro credited

the testimony of the Division's caseworker that the children were

well-adjusted, well-cared for, and happy in their grandmother's

home. The court gave little weight to the testimony of C.C.'s

paramour that the children became upset when their visits with

their mother ended, and that they wanted to go home with her. The

court found more credible that the parents had "over and over

again disappointed their children by missing visits, leaving

visits without explanation, and not showing up when their children

needed them the most."

3
 C.C.'s attorney then responded that the report was admissible as
a consultant's report under Rule 5:12-4(d), apparently for the
purpose of introducing the hearsay statements C.C. made to the
evaluator, but "not the diagnostics." The court reserved decision.
Notably, in its list of items admitted into evidence accompanying
her order, the court included the report, but there is no
indication that it was ever offered for the purpose of introducing
Dr. Miller's opinions or "diagnostics."

 20 A-4799-14T1
 In any event, the court need not, and Judge DeCastro did not,

find that there was no bond or emotional connection between the

children and their parents. Prong four does not require "a showing

that no harm will befall the child as a result of the severing of

biological ties." K.H.O., supra, 161 N.J. at 355. The court's

prong four determination involved the choice between two options:

(1) terminating parental rights followed by adoption by the

grandmother who had served as a capable, loving caregiver in a

stable home; or (2) continuing the uncertainty and lack of

permanency in the children's lives, without any demonstrated

likelihood that C.C. or A.B. would become fit to parent in the

foreseeable future. We discern no error in the court's conclusion

that termination would not do more harm than good.

 Affirmed.

 21 A-4799-14T1